WM. McCOMBS, Adm'r., &c. vs. THE N. C. RAILROAD COMPANY.

Where a witness was examined to prove that a Railroad Company had failed to deliver, to another Company, four bales of cotton according to its undertaking, it was not competent for said witness to state the conclusion to which he had come, by a comparison of the receipts given by the latter Company for a week's shipment, and the books kept by the plaintiff in the action.

When there is no evidence to sustain the declaration of a plantiff, it is the duty of the Court so to instruct the jury.

When a bailment is for the benefit of the *bailee only*, he is bound to take extraordinary care, but when it is for the benefit of the *bailor only*, the bailee is only liable for gross neglect, *Crassa negligentia.*

ACTION of assumpsit, begun under the old system, tried before *Logan, J.,* Fall Term, 1871, of MECKLENBURG Superior Court.

The action was brought to recover the value of four bales of cotton, which came into possession of the defendant and were alleged to have been lost by negligence. Plaintiff declared:

1st. Upon a special contract, to deliver the cotton to the Charlotte & South Carolina Railroad Company, at Charlotte, for shipment.

2d. Upon a general undertaking, or custom of defendant's agents, to deliver cotton shipped over its road to the agents of the Charlotte & South Carolina Railroad Company.

3d. Against the defendant as a warehouseman.

4th. Against defendant as a common carrier.

Dr. Gilmer testified that he contracted to sell to Farrow, plaintiff's intestate, who was a cotton merchant in Charlotte, four bales of cotton by sample. He lived at a depot called Harrisburg, some fifteen miles from Charlotte. He contracted with defendant to carry four bales of cotton from Harrisburg to Charlotte. Witness came to Charlotte with his cotton, which was taken out of the cars and placed in the depot building of defendant.

Plaintiff's intestate sent one of his clerks, with witness, to examine the cotton, which was done, and the cotton weighed and paid for. The cotton was weighed on the scales of defendant in the depot building, and left there.

Nesbit testifies that he was in the employment of plaintiff's intestate at the time spoken of by Dr. Gilmer. That a clerk of the house was sent with Gilmer to examine and weigh the cotton. That during the week they purchased from ninety to a hundred bales of cotton, all of which were delivered to the Charlotte & South Carolina Railroad Company for shipment, and receipts taken therefor.

Plaintiff proved by this witness, after objection by the defendant, that he had never seen the cotton bought from Gilmer, but that he compared the receipts given with the books kept by plaintiff's intestate, and there was a deficiency of four bales.

Witness further testified that it was the practice, or custom, between the defendant and the Charlotte & South Carolina Railroad Company, for the agents of the former at Charlotte to deliver to the agents of the latter any cotton which came over the North Carolina Railroad for shipment, and take receipts therefor, without any special direction. This evidence was objected to, but received by the Court.

A. II. Martin testified that he was the agent of the Charlotte & South Carolina Railroad Company, at the time spoken of; and that the cotton was not received at the depot of his company.

After objection, this witness was permitted to prove the custom spoken of by Nesbit, viz: That it was customary for defendant to deliver cotton intended for shipment over the Charlotte & South Carolina Railroad directly, without any special instructions from shippers.

His Honor was requested to instruct the jury, that the four bales of cotton were not embraced within the custom alleged by plaintiff, and that there was no special contract to forward the cotton beyond Charlotte, or to keep it in defendant's warehouse. His Honor, after reciting the evidence, instructed the jury that

a common carrier was an insurer, except against injury or loss occasioned by the act of God or the common cnemy; that a warehouseman was responsible for ordinary neglect for goods entrusted to his care; that a bailee for hire was bound for ordinary neglect, but a gratuitous bailee for extraordinary care.

He left it to the jury to say, whether the defendant was liable as a common carrier, warehouseman, bailee, or under a special contract, and did not otherwise respond to the defendant's prayer.

Verdict for plaintiff. Rule for *venire de novo.* Rule discharged. Judgment and appeal.

*J. H. Wilson,* for the plaintiff.
*Barringer* and *Bailey,* for the defendant.

Pearson, C. J. We can see no principle upon which the witness, Nesbit, should have been allowed to state, "that on Saturday of that week, in comparing the shipping receipts with intestate's books, it was found that there was a difference of four bales."

If the books had been produced in Court, the entries could not have been offered in evidence, and it was still more objectionable, to permit a witness to state the result at which he had arrived, by a comparison; neither the shipping receipts nor books being present to verify its correctness.

His Honor erred in refusing to instruct the jury, "that there was no evidence of an undertaking on the part of the defendant to deliver those four bales to the Charlotte & South Carolina Railroad for transportation. By a contract with Gilmer, the defendant undertook to deliver the cotton at its depot in Charlotte to Gilmer, there being no consignee. Gilmer came on the same train and received the cotton at the defendant's depot in Charlotte; so the contract with Gilmer was executed, and Gilmer, like a prudent man, had an eye to the cotton until

it was weighed and paid for. It had been taken into the depot house of defendant, for the purpose of being weighed. After that Gilmer had no further concern with it, and, for aught that appears, the four bales of cotton were left on the floor of defendant's depot house, and were not in the charge of any one, except that it was constructively in the possession of Farrow, who had bought and paid for it, and so, of course, was under his charge, or that of his agents.

There is no evidence that Farrow notified the agent of defendant, that .he had bought Gilmer's four bales of cotton. There is no evidence that Farrow requested the agent of the defendant to carry the four bales from the defendant's depot and deliver it to the Charlotte & South Carolina Railroad for transportation, and undertook to pay what such carrying from the one depot to the other was reasonably worth, and there is no evidence that Farrow notified the defendant's agent of the consignee, to whom the cotton was to be sent, or of the place to which it was to be sent. Under these circumstances, had the defendant shipped the cotton on the Charlotte & South Carolina Railroad, consigned to no one, and without a place of delivery, the act would not only have been looked upon "as officious," and subjecting the defendant to damages, but foolish!

Suppose there was a custom, or general undertaking, binding on the defendant, to deliver to the Charlotte and South Carolina Railroad all cotton which came on the defendant's road to Charlotte, "*for shipment to market,*" that is with a through ticket, to some consignee at some place beyond Charlotte, such custom or general undertaking had no application to these four bales of cotton. This cotton was not sent on the defendant's road to Charlotte, "*for shipment to market,*" but was, by the contract with Gilmer, to be carried to Charlotte, and there to be delivered to him ; with which contract the defendant fully complied, and that was the end of it, in the absence of any evidence that the defendant, at the instance of Farrow, under-

took to deliver the cotton to the Charlotte and South Carolina Railroad, for transportation beyond that point.

Pressed with this difficulty, the plaintiff's counsel, as we infer from his Honor's charge, then took the position that the defendant undertook, as warehouseman, to keep the cotton for the plaintiff. His Honor ought to have instructed the jury that there was no evidence to support the allegation, that the defendant had undertaken, as a warehouseman, to keep the cotton for the plaintiff. There is no evidence that the defendant knew that the plaintiff had bought the cotton, or ever had any communication with him in respect to this cotton.

We must infer from his Honor's charge, that plaintiff's counsel then took the position that as the cotton, after being weighed, was left on the floor of the defendant's depot house, it will be presumed that the defendant gratuitously undertook to keep it for the owner, whoever he might be, and as the plaintiff turns out to be the owner, he has the right to avail himself of this gratuitous undertaking.

Without conceding this presumption, but supposing it to be so for the sake of the argument, his Honor erred in charging the jury that "a gratuitous bailee is bound to take extraordinary care." This is manifestly erroneous, as applicable to the case in hand. His Honor inadvertently reversed the rule of law, and confounded the matter. When a bailment is for the benefit of the *bailee only*, he is bound to take extraordinary care, and is liable for slight neglect. When a bailment is for the benefit of the *bailor only*, which is the supposed case we have under discussion, the bailee is only liable for gross neglect, "*crassa negligentia*," approaching very near to fraud.

It is not necessary to advert to the other points in the case. Either these four bales were sent on the Charlotte & South Carolina Railroad, and there is a mistake in the comparison of the shipping receipts and the books of Farrow, or else the cotton was misappropriated by the agents of Farrow, or by the agents of the defendant, or it was stolen by some third person.

Although this action was commenced in 1857, it is the plaintiff's misfortune that he has not, as yet, been able to reach the merits of the case.

PER CURIAM.                                    *Venire de novo.*