J. S. BASNIGHT v. THE ATLANTIC AND NORTH CAROLINA RAILROAD COMPANY.

*Negligence — Damages — Common Carrier — Liability as an Insurer— Warehouseman—Gratuitous Bailee.*

1. In an action against a railroad company for damages for negligence in allowing the burning of some timber on a car intended for shipment, it appeared that the plaintiff loaded the car on defendant's track, but did not notify the agent that it was ready for shipment, nor of the name of the consignee; the car was moved by defendant's agent to another track (erected for shipper's convenience) very close to a dry-kiln, from which it took fire; the Court found by consent that the timber had been left with defendant, awaiting orders for shipment, and, as, a conclusion of law, that defendant was not an insurer, but a simple warehouseman: *Held*, defendant's liability was that of a warehouseman, and not that of a common carrier, and the fire being accidental, no such negligence was shown as entitled the plaintiff to recover.

2. A common carrier is responsible only when goods are delivered and accepted by him in the usual course of business for immediate transportation.

3. The defendant's liability as warehouseman in this case was only that of a gratuitous bailee.

AVERY, J., dissenting.

CIVIL ACTION, tried before *Winston, J.,* at Spring Term, 1892, of CRAVEN Superior Court.

"The plaintiff contends that the Atlantic and North Carolina Railroad Company received from him a car load of lumber for transportation; that the lumber was destroyed by fire and was not delivered by the said railroad company through their negligence; that the railroad company is a common carrier, and is liable as insurer to the plaintiff in the sum of damage to $159.99. The defendant denied all of the allegations of the plaintiff."

The foregoing constitutes the pleadings in the Justice's Court, from which the case was brought by appeal into the Superior Court and there tried.

The plaintiff introduced the following testimony:

J. S. Basnight, being sworn, testified as follows: "On December 23, 1889, I went to depot of Atlantic and North Carolina Railroad, and saw freight agent of defendant and asked for a car to load lumber; I don't remember whether I told him where the car was to go or not, but think I did; the lumber was to go to Philadelphia. He gave me a car to put lumber in, saying, 'there is a car setting on a track near here;' I said all right. I went to mill and sent lumber up; the car was on one of four tracks there—the second track from south side; the freight house was about twenty steps from car, and was built of brick; there was no other car on that track at that time. I loaded the car on the 24th of December, and finished at night; on the 25th it was burned up; the fire broke out in Congdon & Co.'s dry-kiln; the car was burned in part only. The car had been moved and put on the extreme north track, or fourth track, the last track, which was within three or four feet of the dry-kiln. There was a planing mill, built of wood, ten or twelve feet apart from the dry-kiln; the dry-kiln was built of brick. I saw the car while fire was going on; I did not know the car had been moved; I suppose the car was in my charge while loading it, my hands

111—38

loaded it. I did not notify agent that it was ready to ship, or to take charge of it, as it was late at night when it was finished loading; no bill of lading was given me. They had not been informed by me to whom it was to go. I had to accept the car where it was, and had no authority to move it myself to any other track. I suppose all the tracks belong to the railroad company. I did not remove the car nor request the railroad company to move it. The President of defendant company told me, after car was burned, upon my asking what to do about it and demanding damages, for me to have the lumber overhauled, and keep an account of what was good, to sell that for what I could get for it, and they would collect the money for what was lost out of the insurance company; he afterwards told me that the car was not insured, and refused to pay the loss. Dave Williams, an employee of the railroad, moved the car, while it was being loaded, to the other track, upon which it was burned. I was afterwards informed that the last load was put in the car after it was put upon the fourth or last track mentioned."

E. K. Bryan testified as follows: "I was agent for the defendant company at the time mentioned above. Let plaintiff have the car. The railroad company built the four tracks as a mutual accommodation to the railroad and Congdon & Co.'s mill. We used it occasionally to put empty cars upon. We avoided putting cars upon the fourth track, as we regarded it as dangerous on account of fire. I suppose the car was moved to make room for our business. The fire broke out at 2 P. M. the next day. The railroad company did not know the car was loaded, and the plaintiff had not notified us to ship it, or that it was full."

C. S. Ives testified as follows: "The fourth track was put in for the use of Congdon & Co.; other cars were placed upon it by the railroad company when they saw fit."

This closed the evidence for the plaintiff. The defendant declined to introduce any evidence. It was agreed that the

evidence introduced by the plaintiff should be accepted as the facts in the case.   Upon these facts his Honor should base his conclusions of law, and thereupon the Court rendered the following judgment:

" This cause, coming on to be heard, and having been heard, the plaintiff having offered all the testimony, and the defendant declining to introduce any evidence, the Court adjudges that the defendant company were not common carriers of the lumber, to recover damages for the burning of which this action is brought.

The Court, by consent, finds that said lumber had been left with the defendant awaiting orders to forward the same, and, as a conclusion of law, that the defendant was not an insurer of said lumber, but was a simple warehouseman.

The fire by which the same was destroyed being accidental, the Court holds that the defendant is not liable; that it exercised that degree of care which a reasonably prudent man would take of his own property under similar circumstances, and was not negligent; wherefore, the Court considers and adjudges that it go hence without day and recover its costs."

From which judgment the plaintiff appeals, and assigns as error that the facts in evidence do not warrant in law the conclusions of his Honor.

*Mr. J. W. Waters*, for plaintiff.
*Mr. W. W. Clark*, for defendant.

MACRAE, J.: We may consider this as a demurrer to the evidence, the defendant admitting the facts to be as testified to by plaintiff's witnesses, and contending that upon the facts found the plaintiff is not entitled to recover.

We concur entirely with his Honor below in his conclusion that defendant's liability was not that of a common carrier. Taking the facts most strongly in favor of the plaintiff, he asked of the defendant's freight agent a car to load with

lumber to go to Philadelphia. The agent pointed out to the plaintiff a car which he might use for the desired purpose. The plaintiff loaded the car with lumber, and finished on the night of the 24th of December, but did not notify defendant's agent that the car was ready for shipment nor of the name of the consignee.

Treating the loading of the car upon defendant's track as a delivery to defendant and an acceptance, it was not yet ready for transportation, for the defendant had not been notified of its readiness nor to whom it was to be shipped. It was necessary for the defendant to await further orders before shipment. Where goods are delivered to a common carrier to await further orders from the shipper before shipment, the former, while they are so in his custody, is only liable as warehouseman. *O'Neal* v. *Railroad*, 60 N. Y., 138 ; *Wells* v. *Railroad*, 6 Jones, 47 ; Angell on Carriers, sec. 129. He is only responsible as carrier where goods are delivered to and accepted by him in the usual course of business for immediate transportation. 2 Am. and Eng. Enc. of Law, 808.

As to defendant's liability as warehouseman, if the complaint may be construed to set up a claim on this account, by the testimony in the case, which is admitted to be true, the defendant was a gratuitous bailee, and the facts do not establish such negligence as would entitle the plaintiff to recover. Schouler, B. & C., 390 ; *McCombs* v. *Railroad*, 67 N. C., 193. " A negligence followed by liability to others is defined as the judicial cause of an injury when it consists of such an act or omission on the part of a responsible person, as in ordinary natural sequence immediately results in such injury." Wharton Neg., sec. 73. It must be the natural and proximate consequence of the act complained of. 2 Greenleaf Ev., 256 ; *Chalk* v. *Railroad*, 85 N. C., 423. There is no error, and the judgment is

Affirmed.

AVERY, J., dissents.