SAMUEL W. HAYES, CHIEF JUSTICE.
MATTHEW J. KANE, VICE CHIEF JUSTICE.
R. L. WILLIAMS,
R. H. LOOFBOURROW, }JUSTICES.
JOHN B. TURNER,

ATCHISON, T. & S. F. RY. CO. *et al.* v. HOMEWOOD.

No. 1570.   Opinion Filed July 18, 1912.

Rehearing Denied September 2, 1913.

(134 Pac. 856.)

CARRIERS—Destruction of Property on Side Track—Liability. A spe-
cial car in which a theatrical troupe was traveling, eating, and
sleeping was hauled to Tecumseh by a railway company, and left
on a siding at the request of the owner. The owner and the
railway company intended for it to remain at Tecumseh two days,
and for it to be used by the owner and the troupe as a boarding
place while they gave performances, after which it was intended
for the railway company to haul it to the next stopping place.
It was destroyed by fire a few hours after it had reached Tecum-
seh. After the car was set at a point designated by the owner,
it was removed without his permission to a point where it was
destroyed by fire. Held: (1) That the railway company was not
responsible for the car as a common carrier after it was set out.
(2) That the company did not, by moving the car, become respon-
sible as a carrier.

(Syllabus by Rosser, C.).

*Error from District Court, Pottawatomie County;*
*J. B. A. Robertson, Judge.*

Action by Harry Homewood against the Atchison, Topeka & Santa Fe Railway Company and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

*Cottingham & Bledsoe, Chas. H. Woods,* and *Geo. M. Green,* for plaintiffs in error.

*Blakeney & Maxey,* for defendant in error.

Opinion by ROSSER, C. This was an action by Harry Homewood against the Atchison, Topeka & Santa Fe Railway Company and the Gulf, Colorado and Santa Fe Railway Company to recover damages for the loss of a certain car, called "Gertrude," together with its contents. The plaintiff, Harry Homewood, was engaged in the management of a certain minstrel show, and sometime in November, 1907, he entered into contracts to present the show at Tecumseh and other places in the state of Oklahoma. On the 21st of November, 1907, he applied to the station agent of the Gulf, Colorado & Santa Fe Railway Company, at Gainesville, Tex., for transportation of the car, with its contents, and the troupe or company composing the minstrel show from Gainesville to various points in the state of Oklahoma, where he expected to give performances, among others the town of Tecumseh. It appears that there was an understanding between the plaintiff and the agent at Gainesville that this car should be moved over the entire route, stopping at the various places long enough to give the shows, according to plaintiff's contracts. The plaintiff made no general, written contract as to the moving of the car, but bought tickets from point to point for the twenty people comprising his company, and the car was hauled without extra compensation. The car was brought into Tecumseh on the afternoon of November 27, 1907, and set out at a point, designated by the plaintiff, some distance from the station. It was plaintiff's intention to allow the car to remain at Tecumseh while the company showed or played there that day. He then intended to haul the necessary paraphernalia by another convey-

ance to Shawnee and give two performances the next day, allowing the car to remain at Tecumseh, and he intended then to take the car to Lindsay, which was the next place of performance. After the car was placed according to his orders, a freight train came into the station and was compelled to go upon the side track, upon which the car was standing, while another train passed. This train was compelled to move the car in order to get into the siding. The freight train did not replace the car at the point where it had first been placed, but left it at a point on the track along the side of the depot or station house, and while standing there, about 10 or 10:30 p. m., the car and contents, as well as the station, were destroyed by fire.

Mrs. Homewood testified that she objected to the car being placed opposite the station house, but is contradicted upon this point by witnesses for the defendant. There was evidence that some members of the troupe objected to the place where the car was first placed, because it was a muddy place, and they were compelled to pass through the mud in going to or alighting from the car.

It is contended by defendants that the evidence in the case shows that the fire was of incendiary origin, and was started by Homewood himself, and that for that reason he cannot recover. A number of pages of the brief is devoted to this question. There are many suspicious circumstances, and some testimony almost positive that Homewood started the fire, and from reading the record it would seem that a considerable portion of the evidence sustains that theory. But there is considerable substantial testimony, not only of the plaintiff, but of other witnesses, some of whom are disinterested, tending to show that Homewood did not start the fire. It is the law in this jurisdiction, as well as of all others in this country, that, where there is substantial conflict in the evidence, an appellate court has no right to weigh the evidence for the purpose of arriving at the facts. It is the duty of an appellate court, where there is evidence reasonably tending to support the verdict of a jury, to allow the verdict to stand. *First National Bank of Guymon v.*

*Arnold,* 28 Okla. 49, 113 Pac. 719; *Binion v. Lyle,* 28 Okla. 430. 114 Pac. 618; *Grimes v. Wilson,* 30 Okla. 322, 120 Pac. 294, and cases there cited.

The case was tried upon the theory that the company was the insurer of the car, and shoud be required to make good its value, whether lost through its negligence or not. The issue of negligence was not submitted to the jury. The defendants do not appear to question the theory that, when the company undertook to haul the car, it became the insurer of the car while in transit, and the authorities support the doctrine that, where a railroad company, without a special contract limiting its liability, undertakes to haul a car, its liability is the same as when it undertakes to transport ordinary freight. *Pennsylvania R. Co. v. New Jersey R. & Transp. Co.,* 27 N. J. Law, 100; *Peoria & Pekin U. R. Co. v. C., R. I. & P. Ry. Co.,* 109 Ill. 135, 50 Am. Rep. 605; *Mallory v. Tioga R. Co.,* 39 Barb. (N. Y.) 488. The questions which seem to have been litigated were whether or not the plaintiff himself started the fire, and whether or not the car had been delivered to plaintiff in such a way as to relieve the company of its liability as a carrier or insurer. A considerable portion of the briefs of the parties, and almost the whole of the oral argument, was devoted to the question of delivery. The defendant relies on Comp. Laws, sec. 451 (Rev. Laws 1910, sec. 822), and following sections to show its duty with reference to delivering the property, and contends that its liability ceased upon the arrival of the car.

It is evident that the sections of Comp. Laws 1909 referred to have no application in this case. These sections contemplate that the property is to be taken away. The plaintiff could not move the car, and it was not contemplated by either party that it would be moved. The parties intended for the car to stand on the siding until the plaintiff had filled his engagements at Tecumseh and Shawnee, and was ready to proceed to some other point. The question then is, Was the company to be liable as a carrier while the car stood at the station? The question of delivery is not decisive of this case. It seems clear that the car was delivered to plaintiff, as far as it was possible to make de-

livery, not to be taken away, but to be used by him at Tecumseh. He was in actual possession, and was using it as his home and as a hotel for his employees at the time the fire started.

There is a strong resemblance between this case and the case where goods are detained by the carrier before commencement of actual transportation at the request of the shipper, and for his accommodation. It is universally held that, where goods are detained at the request of the shipper, and for his accommodation, or in order that something further may be done to prepare the goods for transportation, the carrier's liability during such detention is only that of warehouseman. 6 Cyc. 453, citing numerous authorities. The carrier is not the insurer of the goods until it becomes its duty to forward them.

The rule is stated in the case of *Barron v. Eldredge,* 100 Mass. 455, 1 Am. Rep. 126, by Mr. Justice Colt, as follows:

"The responsibility of a common carrier for goods intrusted to him commences when there has been a complete delivery for the purpose of immediate transportation. If, without putting them in transit, the carrier, for his own temporary convenience, places them in store, still the liability of a carrier attaches. The delivery must be for immediate transportation, and, of course, it cannot be complete if anything remains to be done by the shipper before the goods can be sent on their way. If by the usage and course of business, and especially if by express request, the shipment is delayed for further orders as to their destination, or for the convenience of the owner, then, during the time of such delay, the liability is that of warehouseman. The more stringent liability of a common carrier only attaches when the duty of immediate transportation arises. It then shifts from that of warehouseman, although the goods remain unmoved in the storehouse. Whether the responsibility be in one capacity or the other is seldom a matter of express agreement between the parties. It arises out of the relation which the parties sustain, and the duties which the law imposes. These propositions are elementary, and need no extended citation of cases."

In the case of *St. Louis, Alton & Terre Haute R. Co. v. Montgomery,* 39 Ill. 336, the court said:

"If, for example, the same person is common carrier and warehouseman, and he receives goods to be forwarded when he receives orders from the owner, his liability in the meantime is that of warehouseman, and not that of a common carrier."

In *Basnight v. Atlantic & North Carolina R. Co.,* 111 N. C. 592, 16 S. E. 323, Mr. Justice McRea said:

"Where goods are delivered to a common carrier to await further orders from the shipper before shipment, the former, while they are so in his custody, is only liable as warehouseman. *O'Neill v. Ry. Co.,* 60 N. Y. 138; *Wells v. Ry Co.,* 6 Jones [51 N. C.] 47 [72 Am. Dec. 556]; Angell on Carriers, sec. 129. He is only responsible as carrier where goods are delivered to and accepted by him in the usual course of business for immediate transportation. 2 Am. & Eng. Ency. of Law, 198."

In the case of *Burrows v. Chicago, B. & Q. R. Co.,* 85 Neb. 497, 123 N. W. 1028, 34 L. R. A. (N. S.) 220, the plaintiff was the proprietor of a tent show. He loaded part of his outfit into a car furnished him by the railroad company, and retained the balance for his use the following night, to be loaded the next morning. The goods loaded were destroyed by fire, and it was held that the company was not liable as carrier. The court said:

"The rule seems to be well settled that, in order to render a transportation company liable as a common carrier for the loss of goods, delivery of the goods must be made to the carrier, or his agent, for transportation, for, if the goods are delivered to him to be stored by him for a certain time, or until the happening of a certain event, or until something further is done to prepare them for transportation, or until further orders are received from the owner, the carrier becomes a mere depository or bailee until the appointed time has expired, or the other contingency happened upon which the carriage is to commence, or until further orders have been given, as the case may be, for nothing could be more unjust than to permit the owner of goods to impose upon a mere depository or warehouseman, whether he has yet become related to the goods as carrier or not, the extremely hazardous responsibility of the common carrier, so long as it might suit his interest or convenience to do so."

In this case the car was being held at Tecumseh for the benefit and convenience of the plaintiff, and the company, while the car was so held, as to the car, was not a common carrier at all. The law makes a carrier of goods responsible as a carrier, when it has the goods to carry, upon grounds of public policy. But when goods are held in storage by a common carrier, at the request of the shipper, there is no more reason why the carrier

should be held as an insurer than that any other bailee should be so held. In this case, if the plaintiff, without having had his car hauled to Tecumseh by the defendant, had placed it there himself, and had said to the company, "I expect to get you to haul this car to Lindsay day after to-morrow, and in the meantime I want you to let it sit here so my employees can sleep in it," no one would contend the company would be liable. But in principle this case is exactly like it. To hold the carrier liable as an insurer the goods must be in its possession to carry, and, when the owner of the goods requests the carrier to hold them, the carrier ceases to be a carrier while they are so held, especially where the goods are, as in this case at least, partly in the possession of the owner.

It is contended that, because the company moved the car from the place where it was first set out upon the instruction of the plaintiff to a different place, the company had not delivered it, and that it was still in the possession of the company. It is urged by the plaintiff that at the point the car was placed it was impossible for him to take out property on account of the fact that he could not open the door of the cellar, because it was too close to the platform of the depot. The plaintiff himself testified that he did not intend to take anything out of the cellar until the next morning, and that the only reason he wanted the cellar open at all was so he could put his dog in the cellar. If everything had been taken out, the car would have remained, and the question as to whether or not it was delivered was not affected by its position at one place or another on the track. The evidence shows that it was necessary to move the car in order to allow trains to pass at the station, and the fact that it was not replaced upon the exact spot where it was first placed does not affect the question of delivery. It was delivered for his use at Tecumseh when it was set out, and the company, by changing its position, did not assume the relation of common carrier, although it may not have been so conveniently placed as when first set out. It was being held at the request of plaintiff, and therefore the company was not a carrier at the time, whether it was in possession of the car or not.

In view of the foregoing it is not necessary to decide the other questions involved in this case.

The case should be reversed and remanded for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.