### HARRIS, CORTNER & CO. v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals, Fifth Circuit. November 4, 1921.)

#### No. 3711.

Carriers ☞113—Cotton, when destroyed by fire, held not in possession of railroad company as carrier.

    Cotton owned by plaintiffs, which was destroyed by fire after it had been loaded by a compress company, at plaintiffs' request, in cars of defendant railroad company, where the loading certificate issued by the compress company was held by plaintiffs, who had given no shipping directions to defendant and had made no application for a bill of lading, *held* not in possession of defendant as carrier, and defendant held not liable as a carrier for the loss.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action at law by Harris, Cortner & Co. against the Louisville & Nashville Railroad Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

Edgar W. Godbey and A. J. Harris, both of Decatur, Ala., for plaintiffs in error.

John C. Eyster and Charles H. Eyster, both of Albany, Ala., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. Harris, Cortner & Co. (hereinafter styled plaintiffs) brought suit in a state court in Alabama against the Louisville & Nashville Railroad Company (hereinafter styled defendant), to recover damages for the destruction by fire of 100 bales of cotton. Said case was removed to the United States District Court for the Northern District of Alabama.

The original complaint claimed damages for the failure to deliver said bales of cotton alleged to have been received by defendant as a common carrier for delivery to plaintiffs at Liverpool, England. By amendment counts A, B, C, and D were added.

Count A claimed damages for the destruction of said bales of cotton received by defendant as a common carrier.

Count B claimed said damages because the defendant negligently failed to move the cars placed by it at the platform of the compress company for the loading of said cotton with reasonable promptness and expedition after such loading and after the cars were sealed, whereby they were caused to be caught on fire and consumed by a fire that started and swept across the unprotected, uncovered, and cotton-laden platform of said compress company.

Count C alleged the placing and loading of said cars by plaintiffs at the compress platform under contract arrangements with the defendant as a common carrier for the export of such cotton, such cars being placed at a point where there were thousands of bales of cotton on the open, wooden, and inflammable platform, which platform was without adequate protection in case of fire, all of which was known to defendant, by which negligence the cars were caused to catch on fire and consumed by fire, which started and swept across the unprotected, uncovered, and cotton-laden platform of said compress company.

Count D claimed damages for that plaintiffs had arrangements with the defendant as a common carrier for the export of cotton over defendant's lines by way of Mobile, Ala., and Pensacola, Fla.; that it notified defendant of its desire to load said 100 bales of cotton for export, which it was understood by both parties would be moved through Mobile or Pensacola to foreign countries; that the defendant thereupon placed cars for the loading of said 100 bales of cotton at the compress platform, where there were thousands of bales of cotton on the open, uncovered, and inflammable platform of the compress company; on the floor of the platform of said compress plant were large amounts of loose cotton, cotton pickings, loose lint, etc.; that the compress company acted as defendant's agent in compressing

said cotton as a preliminary to and part of the transportation thereof, also loading it on the cars and sealing the cars, and while so acting as agent for defendant negligently allowed such inflammable conditions to continue, whereby fire was communicated, by the burning of the compress premises, to said cars, and plaintiffs' cotton so destroyed.

It appeared from the evidence in the case without dispute that the plaintiffs had said cotton at the compress and held the compress company's warehouse receipts therefor; that on the morning of April 25, 1916, plaintiffs notified the compress company to compress and load said 100 bales of cotton for export. The compress company notified the railroad company, who placed two cars at the compress for loading. The 100 bales were then run through the compress under the supervision of an agent of the plaintiffs, who again weighed the cotton, and it was loaded by employees of the compress company and the cars sealed. The plaintiffs then surrendered the warehouse receipts to the compress company, and the compress delivered to them what was known as a loading certificate addressed to the defendant. The loading of said cars was completed about 2:30 p. m., and the fire occurred about 4 p. m. In a few minutes the cars of cotton were consumed.

No directions had been or were given as to what port the cotton was to be sent for export. The loading certificate was never delivered to the railroad company. No bill of lading was applied for, nor was any communication held with the railroad company after the cotton was loaded. There was no representative of the railroad company present during the loading of the cotton or its handling. Before the cotton was received by the railroad company as carrier under the regulations then existing for export business, it was necessary to deliver to the railroad company the loading certificate issued by the compress company, to make out a bill of lading, showing a ship's contract number, evidencing a contract for space on a particular ship, and prepayment of both inland and ocean freight, and the filing of an export declaration were required. None of these things had been done at the time of the fire.

The court below held that no receipt of this cotton by the railroad company as a common carrier had been shown, and that no negligence had been shown on its part, unless the compress company, in the matter of handling and loading the cotton, was the agent of the railroad company, which had undertaken to do this work for the shipper, and unless it was also shown that the compress company was negligent in and about the character of compress premises maintained by it, and that such negligence prevented the saving of the cotton from the fire. It therefore directed a verdict for the defendant under the original complaint and counts A, B, and C. It submitted the issues to the jury arising on count D. The jury returned a verdict for defendant.

If the court was right in withdrawing from the jury the issues of the original complaint and counts A, B, and C, then the judgment must be affirmed, as whatever charges of negligence were raised under the theory that the compress company was the railroad company's agent, and the railroad company responsible for its negligence, if any, arose under count D, were fairly submitted to the jury, and there was suffi-

cient evidence to warrant the verdict for the defendant. Unless the defendant had received this cotton for shipment as a common carrier at the time it was destroyed by fire, and was therefore liable for its safe delivery (the act of God or the public enemy excepted), the court was right in directing a verdict under the original complaint and counts A, B, and C, as we do not find in the record any evidence of any negligence on the part of the railroad company in not removing the cotton, between the time of completion of its loading by the plaintiffs and the time of the fire.

We do not think the defendant was in possession of this cotton as a common carrier. No bill of lading had been applied for by the shipper. No shipping directions had been given. It could have been shipped by him either for export or not. Even if for export, whether it was to go through Pensacola or Mobile had not been made known to the railroad company. The undisputed evidence is that, if for export, prepayment of both inland and export freight was a prerequisite for the issuance of a bill of lading, or the movement of the cotton. Even the loading certificate was still in the hands of the shipper at the time of the fire. We therefore think the cotton was not in the possession of the railroad company as a common carrier, and that therefore it was not liable as complained of in the original complaint or counts A, B, or C. Kansas City M. & O. R. R. Co. v. Cox, 25 Okl. 774, 108 Pac. 380, 32 L. R. S. (N. S.) 313, 317; St. Louis, I. M. & S. R. Co. v. Commercial Ins. Co., 139 U. S. 223, 11 Sup. Ct. 554, 35 L. Ed. 154; Hutchinson on Carriers (3d Ed.) § 125.

The judgment of the District Court is affirmed.