**GULF, C. & S. F. RY. CO. v. TERRELL BROS. (No. 9227.) \***

Court of Civil Appeals of Texas. Galveston. Jan. 9, 1929.

Rehearing Denied Feb. 14, 1929.

F. J. & C. T. Duff, of Beaumont, H. L. Lewis, of Navasota, and Thompson, Knight, Baker & Harris and Geo. S. Wright, all of Dallas, for appellant.

S. W. Dean, of Navasota (J. B. Leigh, of Navasota, on motion for rehearing), for appellees.

LANE, J. This suit was brought by E. H. Terrell and Mrs. Etta Terrell, who were transacting business under the name of "Terrell Brothers," against the Gulf, Colorado & Santa Fé Railway Company, to recover a judgment for the sum of $762.45, the value of eight bales of cotton which the plaintiffs alleged were destroyed by fire after the same had been accepted by the defendant for transportation as a carrier.

The defendant denied generally, and specially pleaded other matters of fact for the purpose of showing that at the time the cotton was destroyed it had not been accepted by it for transportation and that the same had not been tendered to it for transportation; that shipping instructions had never been given to it; and that at the time said cotton was destroyed the relation of defendant as a carrier had not begun. Other defensive matters were set up, but it is not necessary to repeat them here.

The cause was submitted to the court without a jury upon the following agreed statement of facts:

"1. E. H. Terrell and Mrs. Etta Terrell, composing the copartnership of Terrell Brothers, and E. H. Terrell and W. H. Hendrix composing the firm of Terrell & Hendrix,

*Writ of error dismissed.

are now and at the time of the transaction hereinafter referred to, were cotton merchants engaged in business at Allenfarm, Brazos County, Texas.

"2. The Gulf, Colorado & Santa Fé Railway Company is a railway and transportation company and at the time of the transaction hereinafter referred to, operated the line of railway running from Somerville to Beaumont, Texas, and through Allenfarm, Texas, transporting passengers and freight for hire.

"3. That Allenfarm, Texas, is a non-agency station on a line of railway of the defendant, Gulf, Colorado & Santa Fé Railway Company, and at the time of the transaction hereinafter referred to, Allenfarm, Texas, was a non-agency station at which time and place the defendant did not maintain an agent.

"4. That it was the universal, general and notorious custom at the time of the transactions hereinafter referred to at Allenfarm, Texas; that when a shipper desired to ship cotton from Allenfarm, Texas, over the lines of the Gulf, Colorado & Santa Fé Railway Company, that such shipper would flag the local freight train south bound and advise the conductor of said local freight train that such shipper desired a car or cars to be set out at Allenfarm, Texas, for the purpose of placing therein and shipping therein cotton; that at the time of such notice to the conductor of such local train, if the cotton was not to be shipped until the next south bound local passed through Allenfarm, Texas, the shipper would advise the conductor that the cotton would be loaded into the car and ready for shipment at the time the next south bound local passed through Allenfarm. That after such request of the shipper for placing the cars, the conductor receiving such request would place the number of cars required at Allenfarm, Texas; the shipper would then load the cotton onto the platform of the Gulf, Colorado & Santa Fé Railway Company at Allenfarm, Texas, if he had not previously loaded the cotton on the platform and from the platform would load the cotton into the car or cars that had been previously placed at Allenfarm, Texas, by the conductor, the shipper would then prepare a bill of lading on the form of the uniform bill of lading to be used by the Gulf, Colorado & Santa Fé Railway Company, a copy of which is hereto attached and made a part hereof, and on said form of bill of lading, the shipper would fill out the blanks showing the consignee and consignor, the description of the property, giving the numbers, weight, and marks of the bales of cotton and other information called for in the blanks of the bill of lading. The shipper would keep this bill of lading in his possession until the next local south bound freight train of the Gulf, Colorado & Santa Fé Railway Company passed through Allenfarm, Texas, at which time he would present such bill of lading, which had been prepared by him, to the conductor of said south bound

local train and said conductor would seal the car or cars and sign the bill of lading, pick up said car or cars, attach it to his train and transport it to Navasota, the next agency station.

"5. At the time of the transactions, hereinafter referred to said universal and notorious custom above shown was well known to the plaintiffs and the defendant, and at that time the Gulf, Colorado & Santa Fé Railway Company did not and would not pick up any cotton at Allenfarm, Texas, except by its south bound local trains bound for Navasota and would only place cars at Allenfarm, Texas, by such train, and the said railway ran local trains through Allenfarm, Texas, to Navasota, Texas, only on Mondays, Wednesdays, and Fridays, and made return trips on Tuesdays, Thursdays, and Saturdays.

"6. That on Friday, November 20, 1925, J. P. Terrell, representing the plaintiffs, flagged the south bound freight of the Gulf, Colorado & Santa Fé Railway Company at Allenfarm, Texas, and advised Mr. Evans, the conductor of such train, that he desired a car for cotton seed and a car for cotton placed at Allenfarm, Texas, for shipment of cotton and cotton seed, and that the cotton would be loaded into said car and ready for shipment at the time of the arrival of the south bound local freight train of the Gulf, Colorado & Santa Fé Railway Company, on Monday, November 23, 1925; that the conductor of said south bound train on Friday, November 20th, placed at Allenfarm, Texas, the two cars requested, and thereafter the plaintiffs placed on the platform of the Gulf, Colorado & Santa Fé Railway Company eight bales of cotton belonged to Terrell Brothers and five bales of cotton belonging to Terrell & Hendrix, and transferred said thirteen bales of cotton into said car that had been left by the conductor Evans at Allenfarm, Texas, for said cotton and the loading of said cotton in said car was completed by the said plaintiffs at about five o'clock p. m., November 20, 1925, and that said cotton was loaded for the purpose of shipment.

"7. That each of the plaintiffs prepared a bill of lading on the uniform bill of lading in use by the Gulf, Colorado & Santa Fé Railway Company a copy of which had heretofore been attached, showing the description of the cotton, the destination and the other information called for in the blanks of the said uniform bill of lading for the purpose of delivering the same to the conductor of the south bound local train of the Gulf, Colorado & Santa Fé Railway Company, on November 23, 1925.

"8. That about five o'clock a. m. on November 21, 1925, a fire occurred, of unknown origin, which completely destroyed said thirteen bales of cotton located in said car; that if said fire had not destroyed said thirteen bales of cotton, each of the plaintiffs herein would have, on Monday November 23, 1925,

delivered their respective bills of lading, which had been prepared by them, to the conductor of the south bound local freight train of the Gulf, Colorado & Santa Fé Railway Company on that date, and that said conductor would have signed said bills of lading, sealed said car containing said thirteen bales of cotton, placed it in his said train and carried it with his train to Navasota, Texas.

"9. That the reasonable cash market value of the eight bales of cotton belonging to Terrell Brothers at the time of said fire at Allenfarm, Texas, was Seven Hundred Fifty One and ⁵¹⁄₁₀₀ ($751.51) Dollars. That the reasonable cash market value of the five bales of cotton belonging to Terrell & Hendrix at the time of said fire at Allenfarm, Texas, was Five Hundred Three and ¹⁸⁄₁₀₀ ($503.18) Dollars.

"10. That the Gulf, Colorado & Santa Fé Railway Company had, on a number of occasions, refused to issue to the plaintiffs herein, bills of lading on other shipments prior to the time that the cotton was picked up by the south bound freight train; that each of the plaintiffs herein were aware of the fact that the Gulf, Colorado & Santa Fé Railway Company would not issue bills of lading until such time.

"11. The bills of lading which had been prepared by the respective plaintiffs for presentation to the conductor of the south bound freight train on November 23, 1925, were misplaced or destroyed and cannot at this time be produced.

"12. That during the season of 1925 and prior to November 20, 1925, the respective plaintiffs had shipped cotton over the Gulf, Colorado & Santa Fé Railway from Allenfarm, Texas, and such shipments had all been made under such custom and had all been made to some consignee in Navasota, Texas. That during the seasons prior to 1925 the respective plaintiffs had made shipment from Allenfarm, Texas, over the Gulf, Colorado & Santa Fé Railway under such custom to consignee at destination other than Navasota, Texas. That the consignee named by the respective plaintiffs in the bills of lading prepared by the respective plaintiffs and which had not been delivered to the defendant at the time of the fire, was A. H. Wilson at Navasota, Texas. That the plaintiffs nor any one on their behalf had any communication with any representative, agent or employee of the defendant after the conversation between conductor Evans and J. P. Terrell on November 20, 1925.

"13. Allenfarm, Texas, at the time of the transactions involved herein contained only about twenty-five inhabitants, and at the time of such transactions each of the plaintiffs herein knew that the defendant, Gulf, Colorado & Santa Fé Railway Company, did not have at Allenfarm, Texas, an agency."

The bill of lading attached to the agreement as an exhibit contained the following clause: "Property destined to or taken from a station, wharf or landing at which there is no regularly appointed freight agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and except in case of carrier's negligence, when received from or delivered to such stations, wharves, or landings shall be at owner's risk until the cars are attached to and after they are detached from locomotive or train or until loaded into and after unloaded from vessels."

Upon the facts so agreed to and submitted, the court rendered judgment in favor of the plaintiffs against the defendant for $751.51, with interest thereon at the rate of 6 per cent. per annum from the 1st day of November, 1925.

The defendant has appealed.

Appellant contends that before liability of a carrier begins as a carrier and insurer there must be a complete delivery to it of a shipment for transportation; that if the shipper must perform some service or do some act to effect complete possession and control to the carrier, such as giving shipping instructions, the liability of the carrier does not attach; that since the agreed facts show that no complete delivery of the shipment in this case had been made to appellant by procuring a bill of lading containing shipping instructions, nor in any other manner, appellees were not entitled to a recovery, and the court erred in rendering judgment for appellees and in not rendering judgment for appellant upon its request therefor.

We think the contention of appellant should be sustained. It is a well-established rule of law that a carrier is not liable as an insurer of goods to be shipped until complete delivery thereof is made to it, and in some manner accepted by it for shipment. Gulf, C. & S. F. Ry. Co. v. Anderson (Tex. Com. App.) 246 S. W. 1031; Ft. Worth & Denver C. Ry. Co. v. Tomson (Tex. Civ. App.) 250 S. W. 747; Hutchinson on Carriers, 112, 113; 4 R. C. L. p. 688.

Until shipping directions are given to the carrier, no complete delivery for immediate shipment is made, and in such case the carrier has not become an insurer of such shipment. 10 Corpus Juris, p. 226; Mich. So. & N. I. Ry. Co. v. Shurtz, 7 Mich. 515; Basnight v. Ry. Co., 111 N. C. 592, 16 S. E. 323; Alabama Great So. Ry. Co. v. Mt. Vernon Co., 84 Ala. 173, 4 So. 356.

In 10 Corpus Juris, p. 226, § 311, the following rule is stated: "A well-settled general rule, which is hardly more than a repetition of the propositions stated in the preceding section, is that notwithstanding the goods are in the actual custody of the carrier, its liability as such does not attach before shipping directions have been given, and that its liability is that of a warehouseman only (citing cases), and while it would seem that this principle might be rendered inoperative by

custom or special contract, the implication that the carrier assumes the duty of immediate transportation and its responsibility of an insurer without knowing to what place and to whom goods are to be shipped must be clear."

. In the Michigan case it is said: "If the company cannot carry them because ignorant of the contemplated destination or, because no destination has been concluded upon by the owner, it would be gross injustice to hold them subject to the extraordinary liabilities of common carriers, while thus awaiting the determination of their owner."

In the case of Basnight v. Ry. Co., 111 N. C. 592, 16 S. E. 323, it is said: "Treating the loading of the car upon defendant's track as a delivery to defendant and an acceptance, it was not yet ready for transportation, for the defendant had not been notified of its readiness, nor to whom it was to be shipped. It was necessary for the defendant to await further orders before shipment. Where goods are delivered to a common carrier to await further orders from the shipper before shipment, the former, while they are so in his custody, is only liable as warehouseman"— citing cases.

It is not shown by any fact or circumstance that the loss of the plaintiffs' cotton was caused by reason of any negligence on the part of appellant; indeed, appellees make no contention that any such negligence was shown, but they rely for a recovery solely upon their contention that their cotton had been completely delivered into the possession of appellant for immediate shipment to A. H. Wilson at Navasota, Tex., and that appellant had so accepted same. Such contention is based on the fact that all cotton shipped over appellant's railroad by appellees from their farm during the fall of 1925 up to November 20, 1925, had been made to some consignee in Navasota (not specifically to Wilson).

It is apparent from appellees' discussion that it is their contention that, although they had prior to the year 1925 made shipments of their cotton over appellant's road to points other than Navasota, and to parties other than Wilson, the fact that they had during the season of 1925 shipped only to Navasota was a sufficient instruction to appellant to continue to carry and deliver all future shipments to A. W. Wilson at Navasota.

Under the facts shown, we cannot agree with appellees that they had given appellant shipping instructions. We have examined the authorities cited by appellees, and we find that in all of them the carrier had either accepted the shipment tendered for immediate shipment, after shipping instructions had been received by them, or was under the law bound to accept the same for shipment. But in no case has it been held that the carrier had accepted the shipment for immediate transportation, and become an insurer, when shipping instructions had not in some manner been given.

The agreed facts also show that the cotton was placed in the car three days before the car was to be taken up by appellant, without any notice to appellant that it was so placed, and that it was destroyed two days before appellant was to place the car in its train for transportation.

Having reached the conclusion that by the agreed facts it is shown that the plaintiffs' cotton was not destroyed as the result of any act of negligence on the part of appellant, and that no complete delivery of the same for immediate shipment was made to appellant, we hold that appellant was not liable for its loss. The judgment is therefore reversed, and judgment is here rendered for the appellant.

Reversed and rendered.