**NATIONAL UNION FIRE INS. CO. v. ATLANTIC & EAST CAROLINA RY. CO.**

No. 6346.

United States Court of Appeals Fourth Circuit.

Argued Jan. 8, 1952.

Decided Jan. 25, 1952.

Rufus P. Upchurch, Raleigh, N. C. (Murray Allen, Raleigh, N. C., on the brief), for appellant.

Robert S. Langley, Kinston, N. C. (Matt H. Allen, Kinston, N. C., on the brief), for appellee.

Before PARKER and DOBIE, Circuit Judges, and WEBB, District Judge.

DOBIE, Circuit Judge.

Appellant, insurer-subrogee, instituted this action in the United States District Court for the Eastern District of North Carolina to recover from appellee (hereinafter sometimes referred to as the Rail-

way) the sum of $5,079.08 as damages resulting from the destruction by fire on September 11, 1948, of some fifty-four bales of cotton stored in the Railway's warehouse at La Grange, North Carolina.

The essential facts show that one Britt was engaged buying cotton for the account of Pell Cotton Company. At the time of the fire, Britt's own warehouse, which he had leased from appellee, was filled, since the cotton buying season was at its height. He, therefore, obtained permission from appellee's agent to store his surplus cotton in its warehouse, and the cotton here in question was unloaded, weighed and placed in the Railway's warehouse by Britt. The Railway was not informed as to the quantity of cotton so stored, no bills of lading were issued nor did Britt issue any transportation instructions as to the consignee, destination or amount to be shipped. Britt did testify, however, that on the day the fire occurred, he requested that two cars be made available for transporting cotton. The testimony of Britt also shows that once the cars were available, it was incumbent upon him to weigh the cotton, load it on the cars and then make out the bills of lading.

Upon these facts, the District Court determined that the Railway at the time of the fire was acting as a warehouseman and not as a carrier, and since the Railway was not guilty of negligence, it was not liable. From this decision appellant has appealed to us.

Appellant maintains that the cotton destroyed by fire had been delivered to the Railway for transportation, and therefore, the absolute liability of a carrier had attached. With this contention we cannot agree.

It has long been the rule that before the absolute liability of a carrier attaches, there must be a complete delivery. In other words, there must be a delivery for immediate transportation. This view finds support under both the North Carolina decisions and authorities elsewhere. In Wells v. Wilmington & W. Ry. Co., 51 N.C. 47, the court had this to say: "The liability of a railroad company as a common carrier does not begin until the article is received by its agent and is put into its custody for the purpose of being carried on the road. * * * If, however, the article is kept over for the convenience of the owner, as if he should request that it might be put into the warehouse and not be sent until further instructions, then, as we apprehend, the company would not be liable as a common carrier, but only as a depository, inasmuch as the article was not received for carriage until such further instructions should be given."

And again in Basnight v. Atlantic & N. C. R. Co., 111 N.C. 592, 16 S.E. 323, at page 324 where the car had been loaded and delivered to the railroad, the court again approved the general rule: "Treating the loading of the car upon defendant's track as a delivery to defendant and an acceptance, it was not yet ready for transportation, for the defendant had not been notified of its readiness, nor to whom it was to be shipped. It was necessary for the defendant to await further orders before shipment. Where goods are delivered to a common carrier to await further orders from the shipper before shipment, the former, while they are so in his custody, is only liable as warehouseman. * * * He is only responsible as carrier where goods are delivered to and accepted by him in the usual course of business for immediate transportation. * * * As to defendant's liability as warehouseman, if the complaint may be construed to set up a claim on this account, * * * defendant was a gratuitous bailee, and the facts do not establish such negligence as would entitled the plaintiff to recover."

In Dobie, Bailments and Carriers, pp. 413–414, the rule, with citation of cases, is stated as follows: "The delivery, however, is not one for immediate transportation if anything remains to be done by the shipper before the goods can be sent on their way. If by the usage and course of business, and especially if by express request, the shipment is delayed for further orders from the shipper as to the destination of the goods, or for the convenience of the shipper, then, during the time of such delay, the carrier's liability is merely that of a warehouseman. The more stringent lia-

bility of a common carrier attaches only when the duty of immediate transportation arises."

To the same effect, see Hutchinson, Law of Carriers, 2d ed. § 88.

When these rules are applied to the facts presented here, the only conclusion that can be drawn is that there had been no delivery to the carrier for immediate transportation. The Railway had not been informed as to the amount or grade of the cotton to be shipped, its weight, destination or the consignee. Indeed, cars for its transportation had not yet been furnished, and Britt still had the duty to weigh and load the cotton himself. What we have here is a gratuitous bailment by the Railway to accommodate one of its customers.

For these reasons, the decision of the District Court is affirmed.

Affirmed.