Delta and Pine Land Company *v.* Illinois Central Railroad Company.

No. 40449          June 10, 1957          95 So. 2d 572

488

*J. Robertshaw,* Greenville, for appellant.

*Byrd, Wise & Smith,* Jackson; *Farish, Keady & Campbell,* Greenville, for appellee.

APPELLANT IN REPLY.

KYLE, J.

The appellant, Delta and Pine Land Company, sued the appellee, Illinois Central Railroad Company, in the Circuit Court of Washington County for the sum of $2,995.35 as damages sustained by the appellant on account of its loss of thirty-two bales of cotton, which were destroyed by fire during the early morning hours of October 11, 1955, after the car had been moved from the appellant's gin at Lamont and placed upon a siding owned by the ap-

pellee at Scott, Mississippi, to await the issuance of a bill of lading and shipping instructions.

The declaration charged that the thirty-two bales of cotton had been loaded on the appellee's freight car at the appellant's gin at Lamont, that the loading had been completed, the car sealed, and "accepted by the defendant for immediate shipment to the Memphis Compress and Storage Company, at Memphis, Tennessee;" that the car was then attached to appellee's freight train and moved northwardly five miles from the Lamont gin to Scott, Mississippi, where the car was placed upon a railroad siding owned by the appellee; and that while on the siding the car caught fire about 3:15 A. M. the following morning. The appellant charged in its declaration that the entire custody of the cotton had been surrendered by it, and that the appellee had received complete control of the cotton for immediate shipment, and had actually put the cotton into transit and was therefore responsible for the damage to the cotton.

The appellee in its answer admitted that the loaded car had been picked up by its freight train at 11:30 A. M. on October 10, at the Lamont gin and moved to Scott, where it was set out on a house track; but the appellee denied that it had accepted the cotton for immediate shipment. The appellee averred in its answer that it had moved the loaded car for the convenience of the appellant; that no bill of lading had been issued for the shipment of the cotton at the time of the fire, and the appellant had not given to the appellee any shipping instructions; and that the car was in the appellee's care awaiting the receipt of such instructions. The appellee averred in its answer that its status with reference to the cotton at the time of the loss was not that of a common carrier, but that of a warehouseman, whose obligation was discharged by the exercise of reasonable care; that the fire was of unknown origin, and the damage done to the cotton was not the result of any negligence on the part of

the appellee; and that the appellee was not liable for the damage.

To the appellee's answer the appellant filed a replication, in which the appellant admitted that the fire did not result from negligence on the part of the appellee, but denied that the appellee was a warehouseman only and that the box car had been moved from Lamont gin to Scott for reasons of convenience to the appellant.

The case was tried before a jury, and at the conclusion of the evidence the court directed a verdict for the appellee, and from the judgment rendered thereon, the appellant has prosecuted this appeal. The only error assigned and argued as ground for reversal of the judgment is the granting of the peremptory instruction in favor of the appellee.

Two witnesses testified for the appellant during the trial. C. W. Rippee, the supervisor of the appellant's central service department at Scott, Mississippi, who had direct supervision of appellant's shipping operations and the preparation of bills of lading for the shipment of cotton, testified that the appellant had four gins on its plantation, and that the appellant shipped approximately 26,000 bales of cotton from Scott over the appellee's railroad during the 1955 ginning season. Rippee stated that the appellee maintained no station at Lamont, but did maintain a station at Scott, with a station agent in charge, whose office hours were from 8 o'clock A. M. to 4 o'clock P. M., and that the customary procedure for the shipment of cotton was for the gin manager to have the cotton loaded into the cars and have each car sealed with a metal seal. The gin manager then reported to Rippee's office at Scott the pertinent information concerning the cotton loaded into the car, and a bill of lading was then prepared by Rippee's secretary, or under her direction, and presented to the appellee's station agent at Scott for the station agent's signature. Rippee stated that,

during the 1955 ginning season, and also for several prior years, the appellant had consigned cotton to two compresses only, namely, the Delta Cooperative Compress, at Greenville, Mississippi, and the Memphis Compress and Storage Company, at Memphis, Tennessee; that normally if a car was going to the Greenville compress, and a bill of lading had been accepted, the train crew would pick up the loaded box car at the Lamont gin, but if the shipment were consigned to the Memphis compress, the train crew would pick up the loaded boxcar at the Lamont gin and then obtain the bill of lading from the station agent at Scott when the train arrived there.

Rippee stated that his office received information concerning the carload of cotton involved in this suit after the cotton had been loaded into the car, and a straight form bill of lading was prepared in his office the same day for the shipment of the cotton, but the bill of lading thus prepared had not been presented to the appellee's station agent for her signature at the time of the fire, and the bill of lading was found on the desk of Rippee's secretary about 3 o'clock A. M., immediately following the fire. Rippee stated on cross-examination that he could not say what time of day the gin manager at Lamont furnished his office with the loading information on the carload of cotton that was damaged by the fire; that after the northbound freight train left Scott, no other train came through until the following day; and that so far as he knew no instructions concerning the shipment of the carload of cotton had been given to the railroad company from his office before the fire occurred.

G. C. Stanton, the manager of the Delta Cooperative Compress at Greenville, testified that because of the congested condition at the compress in October, 1955, the compress declared an embargo on incoming cotton, effective October 9, and cotton was accepted thereafter

only on permits issued by the compress; that the compress continued to receive cotton from the appellant, however, and the compress records showed that eleven carloads of the appellant's cotton were received in due course under bills of lading dated October 11, 1955.

Three members of the train crew testified for the appellee. The brakeman testified that train No. 842 arrived at Lamont at 11:15 A. M. on October 10, and as the train approached the Lamont gin siding the members of the train crew observed a white flag displayed on each side of the railroad track, which meant that the gin manager wanted switching done. The train crew brought the train to a stop, cut the locomotive off from the rest of the train, and headed into the siding. The gin manager told the brakeman that there were three loaded cars on the spur track which he wanted taken out and replaced with empties. The gin manager said: "Take those cars on with you, get the cars away from here." The train crew complied with the gin manager's request by pulling the loaded cars out and replacing them with empties; the engine was then reattached to the train; and the train proceeded on its journey to Scott, shoving the three loaded cars along ahead of the engine. The train was brought to a stop at a point south of the house track at Scott, and the three loaded cars were shoved into the house track. No instructions were given to the members of the train crew by the station agent at Scott concerning the movement of the cars, and the cars were left on the house track. The flagman and the engineer corroborated the testimony of the brakeman concerning the movement of the three cars from the gin at Lamont to Scott. The train conductor was ill in a hospital in Chicago at the time of the trial, and did not testify.

Mrs. R. F. Wade, the appellee's station agent at Scott, testified that she was at the station house when the freight train arrived. She stated that she had closed her

office about 9:30 A. M. and had gone to Mr. Rippee's office to get a billing on car shipments in order to include the information in her 10 A. M. car report; but Mr. Rippee's secretary was unable to give her any instructions at that time, and no such instructions had been received by her when the train arrived. Mrs. Wade stated that she had received no instructions concerning the shipment of the three bales of cotton when she closed her office at 4:15 P. M. She received instructions the following morning on the two carloads of cotton which had not been damaged by the fire, and also nine other cars, all of which were consigned to the compress at Greenville. Copies of the two bills of lading issued by her on those cars were made exhibits to Mrs. Wade's testimony. Mrs. Wade stated that no loaded car ever moved from Scott without a bill of lading being first received, regardless of the destination of the car.

We think there was no error in the action of the trial judge in directing a verdict for the appellee. The proof does not show that the appellee was in possession of the cotton as a common carrier at the time of the fire. No shipping directions had been given by the appellant, and no bill of lading had been issued, or even applied for, at the time the fire occurred. The cotton could have been shipped to the compress at Greenville, or the compress at Memphis, or to a compress at Greenwood or Clarksdale.

The most that can be said about the delivery of the cotton in this case is that the cotton had been turned over to the carrier to be held on the railroad siding until shipping directions were given by the appellants' central service department at Scott.

In discussing the question when the liability of the carrier as an insurer of the property delivered to it attaches, the Court, in Adair v. Yazoo & M. V. R. Co., 142 Miss. 345, 107 So. 371, said: "The carrier's liability as such begins at the moment the shipper surrenders the

entire custody of the goods and the carrier receives complete control thereof for the purpose of immediate shipment. When that takes place, the delivery is complete, regardless of whether the goods are immediately put *in transitu* or not. Where the goods are not ready for shipment and delivered to the carrier to be stored for a time, or until further order of the shipper, or until the happening of some contingency or compliance with some condition, the carrier is a mere warehouseman, and its liability is measured by the principles governing that relation.'' See also Hill Mfg. Co. v. New Orleans M. & C. R. R. Co., 117 Miss. 548, 78 So. 187.

The giving of proper shipping directions to the carrier in this case was essential to a complete delivery of the cotton. The carrier had to know to what place and to whom the cotton was to be shipped, Basnight v. Atlantic & N. C. R. Co., 111 N. C. 592, 16 S. E. 323; Harris v. Louisville & N. R. Co., (C.C.A.) 276 F. 277; Kansas City M. & O. R. Co. v. Cox, 25 Okla. 774, 108 P. 380, 32 L. R. A. (N.S.) 313; Louisville & N. R. Co. v. Echols, 97 Ala. 556, 12 So. 304; Central of Georgia R. Co. v. Sigma Lumber Co., 170 Ala. 627, 54 S. 205, Ann. Cas. 1912D 965; Nelson v. Chesapeake & O. R. Co., 157 Ky. 256, 162 S. W. 1129; Gulf & C. & S. F. Ry. Co. v. Terrell Bros., 14 S. W. 2d 903; Atchison T. & S. F. Ry. Co. v. Farmers' Union Coop. Gin Co., 185 Okla. 526, 94 P. 2d 903. See also 13 C. J. S., p, 287, Carriers, par. 145 c, and cases cited.

In Basnight v. Atlantic & N. C. R. Co., supra, the Court said: ''Where goods are delivered to a common carrier to await further orders from the shipper before shipment, the former, while they are in his custody, is only liable as warehouseman. O'Neill v. New York C. & H. R. R. Co.; 60 N.Y. 138; Wells v. Wilmington & W. R. Co., 51 N. C. (6 Jones, L.) 47, 72 Am. Dec. 556; Angell, Carr. par. 129. He is only responsible as carrier where goods are delivered to and accepted by him in the usual course of business for immediate transportation.''

The appellant alleged in its declaration that the carload of cotton had been accepted for immediate shipment to the Memphis Compress and Storage Company at Memphis, Tennessee; and the appellant alleged in its replication to the appellee's answer, that the pickup at Lamont had been made for the convenience of the appellee in anticipation of the issuance of a bill of lading for transhipment of the cotton to Memphis. But there is no proof in the record to support those allegations. The testimony of the members of the train crew, which was not contradicted, shows that the switching operation at Lamont had been performed at the request of the gin manager and for the convenience of the appellant, and that the cotton was stored on the house track at Scott to await shipping instructions, which according to Rippee's testimony could be issued only by his office staff at Scott.

The liability of the railroad company under the facts disclosed by the record was limited to that of a warehouseman.

The judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Arrington and Gillespie, JJ.,* concur.