## W. F. HICKS v. OSCAR POGUE ET AL.

### Decided October 24, 1903.

**1.—Resulting Trust—Time of Payment—Notes Given.**

P., being in possession of money inherited by his children, used part of it in purchasing land for them, taking the deed therefor in his own name and executing his note for the deferred payments. Before they fell due he conveyed the land to the children by deed which was delivered, but not recorded. P. paid the notes when they fell due with the children's money, and at all times held money of theirs sufficient to pay out the land. The children knew of the purchase of the land for them at the time it was made, and were satisfied therewith. Held, that a resulting trust in favor of the children at the time of the purchase was not defeated by reason of the money not being then paid in full for the land

**2.—Same—Purchaser Without Notice—Valuable Consideration—Creditor Buying at Execution Sale.**

The land was levied on by a creditor of P., and was bought by him at execution sale without notice of the rights of P.'s children therein, and the amount bid by him was applied to the payment of the costs of the suit, it not being shown what the costs were, nor how much thereof the plaintiff creditor was liable for. Held, that it was not shown that he was a purchaser for valuable consideration.

**3.—Same—Varying Consideration in Deed.**

Objection that as the deed of P. to the children recited a consideration of one dollar and no other, the defendant children could not, over plaintiff's objection, engraft another consideration by parol evidence, was not well taken, and the point was immaterial since the right and title of the children did not depend on the deed.

**4.—Evidence—Books Not Accounted For.**

It was not error to refuse to permit plaintiff and a witness to testify as to what the county assessor's books showed with reference to the rendition of the land in controversy for taxes where no reason was shown why the books themselves were not produced.

**5.—Resulting Trust—Notice of, Immaterial.**

Plaintiff not being a purchaser for valuable consideration at his own execution sale of the land, it was immaterial whether or not he had notice at that time of the resulting trust in the land then existing in favor of the defendant children.

Error from the District Court of Dallas. Tried below before Hon. Wm. Poindexter.

*Geo. D. Green,* for plaintiff in error.

*Cleveland & Haynes,* for defendants in error.

TALBOT, ASSOCIATE JUSTICE.—This is an action of trespass to try title, instituted by plaintiff in error against defendants in error in the District Court of Johnson County. The plaintiff in error alleged, in addition to the usual allegations in an action of trespass to try title, that the defendants below claimed the land in controversy by virtue of a deed of conveyance executed by J. T. Pogue and his wife, Ella Pogue, father and stepmother of defendants, on the 6th day of July, 1896; that the consideration of such conveyance was one dollar, and that such con-

veyance was simulated and not a real transaction between the parties thereto, and was never delivered by the grantor to them, or accepted by them. That said deed was made by the said Pogue with the intent to cheat and defraud his creditors, and particularly the plaintiff, and that the defendants knew such purpose and intent. He further alleged that he was a creditor of the said Pogue, and that he, Hicks, claims title to the land through a judgment, execution, levy and sale thereunder, as purchaser at such sale. Plaintiff in error prayed that said deed of Pogue to defendants in error be declared fraudulent and void, and that it be canceled, and he prayed for general and special relief. He also prayed for rents for the use and occupation of said land.

The defendants in error answered by general demurrer, general denial, and plea of not guilty. There was a trial by jury, resulting in a verdict and judgment for the defendants, motion for new trial overruled, and plaintiff, Hicks, appeals.

*Conclusions of Fact.*—Defendants were the children of J. T. Pogue by his first wife, and inherited from their grandfather the sum of $500, which was received by their father, J. T. Pogue, in 1895, and by him invested, with their knowledge and consent, in the purchase and improvement of the land described in plaintiff's petition. For the purpose of more securely vesting the title of said land in his children, as he thought, the said J. T. Pogue conveyed the same to them by deed, dated July 6, 1896, expressing therein the nominal consideration of one dollar. The real consideration was the money of said children received by him from their grandfather's estate and theretofore invested in said land and premises for them. The land was purchased from Gilbert B. Shaw and Horace Thomas, and the deeds taken in the name of J. T. Pogue. The consideration expressed in the deed from Shaw is $10 cash and the sum of $30 evidenced by the said Pogue's note due in one year from its date. The consideration expressed in the deed from Horace Thomas is $30 cash and $25 evidenced by said Pogue's note due in one year from its date, both of said notes retained a vendor's lien on said land, and said notes and deeds were dated the 9th day of May, 1896. The deed to defendants in error dated July 6, 1896, for the land in controversy, was signed and acknowledged by J. T. Pogue and his then wife, Ella Pogue, before George McClusky, a notary public, and left in his possession for the purpose and with the intention on the part of the said Pogue and wife to be by him delivered to defendants in error. In accordance with the intention of the said Pogue and wife, and in furtherance of their purpose, said deed was held by said McClusky and by him actually delivered to Oscar Pogue, one of the defendants in error, in June, 1900, and accepted by said Oscar Pogue in his own behalf and in behalf of the other defendants in error. Said deed was not simulated and fraudulent, but made and delivered in good faith, and at the time of its execution and delivery the land and premises therein conveyed constituted the homestead of the said J. T. Pogue, and was all the real

estate he then owned. It was agreed that title should not be traced further back than in the said J. T. Pogue for common source, and this was done. Before the date of the deed from J. T. Pogue and his wife, Ella Pogue, to defendants in error for the land in controversy, plaintiff in error, Hicks, was a creditor of the said Pogue. He brought suit upon his claim and obtained judgment against J. T. Pogue for the sum of $165.49, with interest thereon at the rate of 6 per cent per annum from the 16th day of December, 1899, and costs of suit. Executions were issued on said judgment regularly, and on the 27th day of July, 1900, the last execution issued was levied on the land sued for, and it was sold by Edwin Forrest, as constable of Precinct No. 6 of Hill County, Texas, on the first Tuesday in September, 1900, after legal notice had been given, to W. F. Hicks, plaintiff in error, at and for the sum of $50. This sum was paid to the constable making such sale, and by him applied to the payment of the costs incurred in the proceedings under which the land was sold. Said constable executed and delivered, in his official capacity, a deed to said Hicks for said land. At the time of the levy of Hicks' execution on the land and at the time of his purchase at the sale he had no notice of any interest or claim of defendants in error to the land in controversy. The deed of J. T. Pogue to his children, dated July 6, 1896, had not been recorded at this time. The record fails to show what amount of these costs, if any, Hicks was bound to pay. The land in controversy was purchased by J. T. Pogue for his children, the defendants in error herein, and the purchase money therefor, including the notes specified in deed to him, and improvements made thereon, was paid by him with money in his possession belonging to defendants in error.

*Opinion.*—It would seem from the record before us that this case was tried upon the idea that there were two theories upon which the defendants in error were entitled to recover or be quieted in their title to the land in controversy, to wit:

(1) That notwithstanding the deeds of conveyance under which they claim were taken in the name of their father, J. T. Pogue, yet the land was bought for them, paid for and improved with money inherited from their grandfather's estate by them, and which had come into the possession of the said J. T. Pogue, and hence a resulting trust was created in their favor, and the equitable title to said land vested in them.

(2) That the land in controversy was the homestead of their father, J. T. Pogue, and that he, while using it as such, conveyed it to them in payment of money which they had inherited from their grandfather's estate, and which he, J. T. Pogue, had received and used.

We think, however, that the controlling question in the case and the one decisive of this appeal is, was a resulting trust created in favor of the defendants in error under the facts stated?

It is earnestly insisted by plaintiff in error that this question must be answered in the negative, on the ground that the evidence, as it ap-

pears from the record before us, is wholly insufficient to establish such a trust. The effect of the contention is that in order to constitute a resulting trust the payment of the money must be made at the time of the purchase, and not subsequent thereto, and that, inasmuch as the deed of Gilbert Shaw and Horace Thomas conveying the land to J. T. Pogue recites that Pogue paid a part of the purchase money therefor in cash and executed his notes for the balance, necessarily a part of the consideration for said land was paid subsequent to the purchase, and hence the above rule was not observed. Generally speaking, to say that in order to constitute a resulting trust the payment of the money must be made at the time of the purchase and not subsequent thereto, states a correct proposition of law, but we do not think the same is applicable to the facts in this case. The deed of Shaw conveys lot No. one (1) of the land in controversy, and recites a consideration of $10 cash paid, and J. T. Pogue's note for $30 payable one year from its date. The deed of Thomas conveys lots two (2) and three (3) of said land, and recites a consideration of $30 cash and J. T. Pogue's note for $25, payable one year from its date. Both deeds appear to have been executed on the 9th day of May, 1896, and the deed of J. T. Pogue, conveying the said lands to defendants in error, and which he says was made because said property was rightfully theirs, was dated the 6th day of July, 1896. J. T. Pogue testified: "I know all the defendants except Brails; the other defendants, except Booker Kaziah, who is my son-in-law, are my children; their mother died December 3, 1885. My children inherited one-eighth interest in their grandfather's estate, amounting to about $500; this money came into my hands and I invested it in a house for them. I owned and purchased lots 1, 2 and 3 in block 2 in Blum, Texas; the children's funds purchased this property; this property was afterwards improved with the children's funds. I lived on this property with my family about two years; in July, 1896, Ella Pogue was my wife; she and I executed a deed to the property in question on July 6, 1896, to Oscar, Georgia and Ona Pogue; there was no other consideration that entered into said transfer than the one dollar named in the deed, except that we transferred the house to the children because it was their property by right, and we thought it best to make a deed to them. I had no other real estate at that time." He further states that the money was received in 1895, and that all of his children were aware of what their money was to be used for, and were fully satisfied with the investment.

In Cobb v. Trammel, 9 Texas Civ. App., 527, it appears that Trammel, with money belonging to his wife and her sister, bought land for them, taking deed in the name of the wife alone, paying part cash and giving a note for balance of purchase money, signed by himself and wife, and which was intended to be paid out of money belonging to his said wife and her sister. Thereafter while holding money of theirs in his hands, he allowed the vendor's lien to be foreclosed on the land and procured deed thereof to himself from the purchaser under the fore-

closure sale, acting, however, as the agent of his wife and her sister. Under these facts this court held, speaking through Chief Justice Lightfoot, that whether Trammel recognized the right of his wife and her sister or not, there was created a resulting trust in their favor, and that a purchaser at execution sale under a judgment against Trammel, with notice of such rights, acquired no title. We can see no material difference in the principle involved in the above cited case and the one we are discussing. Here Pogue received and held in his hands more than enough money belonging to defendants in error to pay the entire purchase price of the land conveyed to him. He paid a part and gave his note for the balance. The record fails to show that he parted with any of this money in any way other than in the purchase of the land in controversy and in making improvements thereon. He swears that the money was so invested, and that the investment was satisfactory to his children. We conclude that the facts show a resulting trust in favor of the defendants in error, and unless the plaintiff in error was a purchaser without notice and for value, the result of the trial in the court below is correct.

It was agreed, as appears from the statement of facts, by the parties to this suit, that plaintiff in error, Hicks, had no notice at the time of the levy of the execution under which the land in controversy was sold, of "any contract, agreement or understanding between the defendants in error and J. T. Pogue, or of any trust relation existing between them, whereby the property in question was the property of defendants in error, and it does not appear from the record that he had any such notice at the time of his purchase.

There can no longer be any doubt about the proposition that the lien of a judgment creditor, secured without notice by levy made upon land, is superior to the unrecorded deed of a vendee of the defendant in execution. If the lien is secured without notice, a purchaser for value at the sale made under the execution is protected in his title thus acquired, whether he have knowledge of the unrecorded deed at the sale or not. Ayres v. Duprey, 27 Texas, 594; Grace v. Wade, 45 Texas, 522; Parker v. Crop, 60 Texas, 111; Borden v. McRea, 46 Texas, 396.

It is said that this is by force of the registration laws, which renders all unrecorded conveyances void as against subsequent purchasers for value without notice and as against all creditors having liens upon the property.

A different rule prevails with regard to a resulting trust, because the holder of such equity can not place his title upon record. It is said in McKamy v. Thorp, 61 Texas, 648, that the title of a purchaser at execution sale, as against a resulting trust must be determined without reference to any notice of it at the time of the levy of the execution, and as Thompson, the judgment creditor, in that case, bought without notice of Mrs. McKamy's title, the only question for discussion was, whether he was a purchaser for a valuable consideration, having paid the

amount of his bid by crediting it upon his judgment against the defendant in execution.

It is well settled that a creditor who purchases land at execution sale and merely credits the amount of his bid on the judgment, is not a bona fide purchaser for value as against the rights of third persons. A distinction is sought to be made in the application of that rule in this case, because the amount of plaintiff in error's bid ($50) was applied to the payment of costs incurred in his suit against J. T. Pogue and the expenses attending the sale at which he bought. Intimation is found in McKamy v. Thorp, 61 Texas, 654, that such a distinction might be drawn, but the question was not raised and not necessary to a decision of that case, and hence the remarks of the learned judge who delivered the opinion in that case were not intended to be, and are not, an authoritative expression upon the subject. It is to our minds doubtful whether this difference would exist under the facts most favorable to the judgment creditor in any such case, but however that may be, we think that the plaintiff in error, under the facts shown by the record before us, is in no position to insist upon the application of such a rule. The statement of facts in the record leaves the question of proof of costs in doubt; and if the amount of the costs incurred in obtaining plaintiff in error's judgment against J. T. Pogue is established by the evidence at all, it is far less than the amount of plaintiff in error's bid for the property in controversy. The record shows that his bid was applied to payment of the *"costs of said execution and the costs accruing from executing the same."* There is no proof whatever of the costs of the execution and the costs of executing it. All the evidence introduced on the subject of costs, as shown by the record before us, was several executions, which had been issued on the judgment against Pogue, concluding with the one levied on the land sued for and under which plaintiff in error claims. Each of these executions showed the amount of plaintiff in error's judgment against Pogue ($165.49 and interest), and the expression "costs taxed, $16.65." It devolved upon plaintiff in error to show that he was purchaser for value. Under the law he was liable for the costs incurred by himself in his suit against Pogue. The amount of the costs so incurred is not shown by the evidence. It is not made to appear that if plaintiff in error caused the amount of his bid for the land, or a part thereof, to be applied to the payment of costs incurred in his suit against Pogue, he was paying anything more than he would have been compelled to pay had he not become the purchaser of it. It seems to us that he must be treated as not having advanced any new consideration upon the faith of his purchase, and as having lost nothing upon the failure of his title to the land. Therefore we conclude that the evidence is insufficient to establish that plaintiff in error was a purchaser of the property in controversy at the execution sale for a valuable consideration.

Plaintiff in error, by his first assignment of error, complains of the first paragraph of the court's charge, which is as follows: "If you be-

lieve from the evidence that the defendants are the children of J. T. Pogue, and that said Pogue received into his hands money of defendants, which they inherited from their grandfather, and with same purchased and improved the lots in controversy, and that thereafter and on the 6th day of July, 1896, while he was occupying same as the homestead of himself and family, he and his then wife, Ella N. Pogue, executed and delivered the deed of date July 6, 1896, to Oscar Pogue, intending then and there that same should operate as an absolute deed of conveyance of the title to the said property to said Oscar Pogue and the other defendants, then and in such case you will find for the defendants."

The grounds of complaint to this charge are: "The deed of date July 6, 1896, recited a consideration of one dollar and no other, and defendants could not, over plaintiff's objection, by parol evidence engraft another consideration. The charge submits to the jury a consideration moving for the conveyance of said land different from that named in the deed. The testimony showing the deed was made in discharge of an obligation due from Pogue to his children, it not being recited in the deed, the same could not be shown. The charge is an abstract proposition of law not sustained by the evidence; and there were no pleadings in the case which authorized the charge or admitted evidence to show the deed was executed for a consideration different from that stated in the deed, and is on the weight of the evidence. There is no evidence that the deed was ever delivered to Oscar Pogue, and does not show that said deed was accepted by defendants in discharge of any obligation then due them by their father."

We believe these objections, especially in view of the facts in this case, are unsound. Besides, it will be noted that if our view of the law of this case is correct as announced in this opinion, the errors complained of in this assignment are harmless. If the equitable title to this property was vested in defendants in error by reason of a resulting trust in their favor, the deed of July 6, 1896, becomes unimportant and immaterial in so far as the same affected their right to the property. Their right and title in this event did not depend upon the deed. The charge complained of, in grouping the facts necessary for the jury to find in order to return a verdict for defendants, placed a greater burden upon them than the law required, as we view the case, hence favorable to plaintiff, and he has no just cause to complain. The verdict of the jury includes the finding that a resulting trust was created in their favor, and the evidence supports such finding.

The contention presented in plaintiff in error's third assignment, to the effect that the court erred in not allowing the witness Green to testify to what the abstract and books in the possession of the county assessor of Hill County, Texas, showed with reference to the rendition of said property for the years 1897, 1898, 1900 and 1901, and in refusing to allow plaintiff to introduce in evidence a diagram taken from said abstract book, showing by whom and in whose name said property

was assessed, is untenable. The books were the best evidence; no reason is shown why said books themselves were not produced, and the evidence offered was hearsay and incompetent. Assignments Nos. 2, 4, 5 and 7 relate to the supposed insufficiency of the evidence to show a delivery of the deed of July 6, 1896; error in the court's charge with respect thereto; the failure to give special charges requested bearing upon the effect of said deed and evidence admitted relating to the same, etc. We will dispose of these assignments by saying that there is no error apparent, and in view of the conclusion reached by us on the other branch of the case above discussed, whatever error there may be, the same has in no way prejudiced plaintiff's right.

Plaintiff in error's sixth assignment will be overruled, for the reason that, if we are correct in our conclusion that he was not a purchaser for value at the execution sale under which he claims, it is immaterial whether he had knowledge of defendants' claim and title to said land, by reason of the resulting trust created in their favor, at the time of his purchase, or not.

We believe there is no merit in plaintiff in error's eighth assignment of error, and the same is overruled.

We find no reversible error in the record, and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.