**GULF, C. & S. F. RY. CO. v. ANDERSON, CLAYTON & CO.   (No. 374—3402.)**

(Commission of Appeals of Texas, Section A. Jan. 24, 1923.)

1. **Carriers ☞113—Carrier not liable as insurer until entire shipment delivered to and accepted by it.**

A carrier is not liable as an insurer of goods to be shipped until the entire quantity ordered to be shipped is delivered to and accepted by the carrier for immediate shipment by it.

2. **Carriers ☞41—Test whether property delivered to carrier for immediate transportation stated.**

The test as to whether property has been delivered to a carrier for immediate transportation is: Is there anything to be done by the shipper to effect passage of complete possession or control to the carrier? If the shipper must perform some service or do some act necessary to give this control over the entire shipment to the carrier, there would be no delivery to it.

3. **Carriers ☞136—Whether compress company's possession was as agent for carrier or for shipper held question of fact for jury.**

In an action against a railroad company for cotton destroyed by fire after having been loaded into a car from the platform of a cotton compress company, to whom instructions over defendant's line had been given, and while search was being made for one more bale on the platform to make the shipment complete, whether the compress company held possession as agent for the railroad company or as agent of the shipper to compress, mark, and deliver the cotton to the carrier was a question of fact for the jury.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by Anderson, Clayton & Co., against the Gulf, Colorado & Santa Fé Railway Company. A judgment for plaintiff was affirmed by the Court of Civil Appeals, 212 S. W. 814, and defendant brings error. Reversed and remanded for new trial.

Terry, Cavin & Mills, of Galveston, Lee, Lomax & Smith, of Fort Worth, and E. M. Browder and Locke & Locke, all of Dallas, for plaintiff in error.

C. M. Smithdeal, of Dallas, for defendant in error.

SPENCER, P. J. This suit was instituted by defendant in error, Anderson, Clayton & Co., to recover of plaintiff in error, Gulf, Colorado & Santa Fé Railway Company, the value of 49 bales of cotton destroyed by fire while located in a car into which it had been loaded.

The facts epitomized are: That in 1915, the firm of Nicholson & Baker, was engaged in buying cotton in the vicinity of Ballinger

to sell to exporters. The cotton so purchased was concentrated upon the Texas Compress Company's platform at Ballinger, where it was weighed, tagged, and a sample taken from each bale by the compress company. These samples with weight sheets carrying tag numbers on each bale were delivered to Nicholson & Baker. The cotton was delivered at the compress at different dates and times; and therefore was not blocked together, but scattered among many other bales on the platform.

On February 8, 1915, defendant in error purchased from Nicholson & Baker, 100 bales of cotton out of the various lots the latter then had on the compress platform. The sale was made from the samples. As was customary in such cases, Nicholson & Baker, directed the compress company to compress and mark 100 bales of cotton and deliver them to the railway company for shipment to defendant in error. The compress company in return gave them the following receipt, or "clearance," as it is termed:

"Texas Compress Company. Compress at Ballinger, Texas. Receipt issued February —, 1915. To the Agent of the G., C. & S. F. Ry. Co.: This is to notify you that Anderson, Clayton & Co. have ordered 100 bales of cotton compressed, marked and delivered to you as per details below. 100 B. C. Marks: U L A W. Destination: Houston, Texas. [Signed] Texas Compress Company, R. L. Bassett, Superintendent."

On February 8, 1915, a bill of lading properly filled out to correspond to the clearance, and to which the clearance itself was attached, was handed to the local agent of the railway company by the shipper for the agent's signature; but the latter declined to sign it because an inspection of the 100 bales had not been made by the representative of the Western Weighing & Inspection Bureau.

The contract between the bureau and the railway company does not appear of record, but it is uncontroverted that it was the practice of the agent of the railway company to refuse to sign bills of lading until this inspection had been made. The representative of the bureau inspected the cotton as to its general condition, condition of bagging, number of bales, and marks. This service was generally performed as the cotton was being loaded into the cars by the compress company. Upon completion of the inspection, and a report thereof to the local agent, the latter would execute the bill of lading.

In compliance with the request to furnish cars, as evidenced by the clearance, the railway company, on February 9, 1915, placed cars adjacent to the platform into which to load the 100 bales. On this date 50 of these bales, properly compressed and marked, as indicated by the clearance, were loaded into a car, and the car removed to another track. Forty-nine additional bales, properly compressed and marked, were loaded into another car, and the car was left in place while search was being made to locate the 1 remaining bale. This 1 bale had not been compressed; neither had it been marked.

While this search was being conducted, the cotton on the platform caught fire, and the flames consumed between 8,000 and 9,000 bales, including, no doubt, the unlocated bale. The fire spread to and consumed the 49 bales contained in the waiting car.

In cases like the present, the compress company charged the local buyer 2 cents per bale for sampling and 3 cents per bale for weighing cotton delivered on its platform. The railway company paid the compress company 2 cents per bale for loading the cotton into the cars. The railway company advanced the compress company 10 cents per 100 pounds for compressing cotton; but the amount thus advanced was subsequently collected from the consignee of the cotton—in this case the defendant in error.

On the day after the fire the local agent of the railway company, acting upon the instructions of the division freight agent of the railway company, executed and delivered to Nicholson & Baker a bill of lading for 99 bales of cotton, dating it February 9th. Nicholson & Baker attached this bill of lading to a draft drawn on defendant in error for the purchase price of the 99 bales of cotton, which draft was paid.

It is not contended that there was any negligence upon the part of the railway company causing or contributing to the destruction of the property, but defendant in error's cause of action is based solely upon the theory that the 49 bales were delivered to and accepted by the carrier, and not redelivered to defendant in error.

Upon the conclusion of the evidence in the trial court each party presented a peremptory instruction for a verdict. The trial court accepted the defendant in error's view, and instructed a verdict for the agreed value of the 49 bales, and judgment was rendered thereon. The Court of Civil Appeals affirmed the judgment. Mr. Justice Talbot dissented. G., C. & S. F. Ry. Co. v. Anderson, Clayton & Co., 212 S. W. 814.

[1] It is an established rule of law that a carrier is not liable as an insurer of goods to be shipped until the entire quantity so ordered to be shipped is delivered to and accepted by the carrier for immediate shipment by it. Defendant in error does not question the correctness of this rule.

[2] The test as to whether property has been delivered to a carrier for immediate transportation is: Is there anything to be done by the shipper to effect the passage of complete possession or control to the carrier? If the shipper must perform some service or do some act necessary to give this control over the entire shipment to the carriers, there would be no delivery to the lat-

ter. The soundness of this proposition is likewise admitted by the defendant in error.

Plaintiff in error contends that, as the compress company was the agent of the shipper to compress and mark the 100 bales and then deliver them to the railway company, and that as it had not compressed and marked the unlocated bale, that there was no delivery to the carrier of the 49 bales. Defendant in error contends that the possession of the compress company of the unlocated bale, uncompressed, unmarked, and uninspected, was the possession of the railway company.

[3] It cannot be doubted that the shipper had delivered the 100 bales into the possession of the compress company, and that the latter had accepted them. The question is: Did the compress company hold possession, as agent and on behalf of the railway company, or was its possession that as agent of the shipper to compress, mark, and deliver the cotton to the railway company? This is a question of fact for the jury's determination. It cannot be said, as a matter of law, under the evidence, that the compress company had received the 100 bales as agent of the railway company; neither can it be said as a matter of law that it had received them merely as agent for the shipper to compress and mark, and after compressing and marking to deliver them to the railway company for shipment. In view of another trial we refrain from discussing the evidence or its probable effect.

We recommend, therefore, that the judgments of the Court of Civil Appeals and of the district court be reversed, and the cause remanded for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.