**PANHANDLE & SANTA FE RY. CO. v. McDONALD et al.**

No. 2770.

Court of Civil Appeals of Texas. Eastland.
Feb. 17, 1950.

Rehearing Denied March 17, 1950.

Mays & Perkins, Sweetwater, Carl Rountree, Lamesa, for appellant.

Bob Huff, Lamesa, for appellees.

LONG, Justice.

G. H. and G. K. McDonald, doing business as the McDonald Gin Company, instituted this suit against Panhandle & Santa Fe Railway Company for damages on account of the destruction by fire of 28 bales of cotton while on the loading platform of the railroad at Lehman in Cochran County, Texas. Plaintiffs alleged a complete delivery of said cotton to defendant and that defendant was liable therefor as a common carrier and, in the alternative, that defendant was in possession of the cotton as a warehouseman and that the destruction of same was brought about by the negligence of defendant (a) in failing to provide a watchman to protect said cotton from fire and (b) in failing to keep fire fighting equipment on the premises. Upon a trial before the court with the aid of a jury, judgment was rendered in favor of plaintiffs for the value of the cotton. Defendant has appealed.

No issue as to the negligence of the defendant was submitted to the jury and none was requested by the plaintiffs. The judgment was based solely upon the theory that defendant was in possession of the cotton as a carrier. We believe the evidence is insufficient to sustain the judgment upon this theory. The facts viewed in the most favorable light to the plaintiff are substantially as follows: In October, 1947, plaintiffs were, and had been engaged for a number of years, in operating a gin at Morton and in connection therewith, they were also engaged in buying and selling cotton. The defendant owned and operated a railroad that extended through Lehman, a small village in Cochran County, located approx-

imately ten miles from the town of Morton. Near the depot of the defendant at Lehman, defendant maintained a platform that was used by shippers for the purpose of unloading cotton thereon from which it was loaded into cars of the defendant. On the afternoon of October 11, 1947, at approximately three o'clock, Hume Russell, agent of the plaintiffs, called Mr. Liles, defendant's local agent at Lehman, and advised him that he was sending 28 bales of cotton for shipment. Defendant's agent told the agent of the plaintiffs that he would not be at Lehman after four o'clock and asked him to get the cotton there by that time. The cotton arrived at Lehman sometime between 4:30 and 5:00 o'clock that afternoon and was unloaded on the platform of the defendant. Plaintiffs' agent sent shipping instructions by the trucker who hauled the cotton. These shipping instructions were not delivered to the agent of the railroad for the reason that he was not in Lehman when the cotton arrived. The agent of the railroad returned to Lehman at approximately seven o'clock P.M. and found the cotton upon the platform. The cotton was completely destroyed by fire about one o'clock the next morning.

In order to establish the relationship of carrier and shipper the delivery of the property to be transported must be complete. Delivery is complete when the shipper has given full and exclusive control of the goods to the carrier. The test as to whether property has been delivered for immediate transportation is, "Is there anything to be done by the shipper to effect the passage of complete possession or control to the carrier?" If there is anything left for the shipper to do, then delivery is not complete. It is well settled that such delivery is not shown when no shipping instructions are given. 8 Tex.Jur. page 105. A carrier, although holding actual custody of the goods to be shipped, does not become liable therefor as a common carrier until shipping directions are given.

"A well settled general rule, * * * is that notwithstanding the goods are in the actual custody of the carrier, its liability as such does not attach before shipping directions have been given, and that its liability is that of a warehouseman only, and while it would seem that this principle might be rendered inoperative by custom or special contract, the implication that the carrier assumes the duty of immediate transportation and its responsibility of an insurer, without knowing to what place and to whom goods are to be shipped, must be clear." 13 C.J.S., Carriers, § 145, p. 287. See also Gulf, C. & S. F. Ry. Co. v. Terrell Bros., Tex.Civ.App., 14 S.W.2d 903; Gulf, C. & S. F. Ry. Co. v. Anderson Clayton & Co., Tex.Com.App., 246 S.W. 1031.

Plaintiffs argue that although shipping instructions were not given, in view of the fact that it had been customary for cotton to be unloaded upon the platform of the defendant in the absence of the agent of the defendant and shipping instructions given later that this custom controls and that, under such circumstances, defendant would be liable as a carrier. The trial court submitted this theory to the jury and in answer to special issues, the jury found that such custom existed. The jury further found that defendant acquiesced in and encouraged such custom and practice. The jury also found the agent of defendant and the agent of plaintiffs came to an understanding as to the time the cotton was to arrive at Lehman; that the cotton arrived at the time agreed upon by the parties and that the failure to give shipping instructions was due to the absence of the agent of defendant. We are of the opinion that the judgment cannot be sustained upon these findings. If the evidence is sufficient to sustain the finding that the parties had an agreement as to when the cotton should arrive, it is further conclusively established that the cotton did not arrive at Lehman at the time agreed upon by the parties. From the testimony of Mr. Russell, the agent of plaintiffs, we quote:

"Q. Mr. Russell, on or about October 11th did you send a load of cotton to Lehman, to the Santa Fe Platform over there? A. Yes, sir, I did.

"Q. Now, before you sent that load of cotton, did you have a telephone conversation with the agent, Mr. Liles? A. I did.

"Q. About what time would you tell this jury that you talked to Mr. Liles over

the telephone? A. Around three o'clock that afternoon.

"Q. Now, tell the jury what this conversation was, Mr. Russell. A. Well, I just called Mr. Liles over the telephone and told him that I was sending another load of cotton down that evening, and he told me, 'Well, if you can get it here before four o'clock' he says, 'I will be here,' and I says, 'Well, I will try to get it down there by four.'"

On cross-examination, the witness further testified:

"Q. And just tell the Court and Jury the substance of that conversation with Mr. Liles. A. Well, I called Mr. Liles and told him that I was bringing another load of cotton down there, and he said, 'Well, get it here by four o'clock, if you can.' I said, 'All right, I will try to,' and he says, 'I am leaving.' That is all.

"Q. Do you recall anything else that was said in that conversation? A. No, sir, I don't recall.

"Q. He told you he was leaving and to get it there by four o'clock. A. Yes, sir."

■ It will be seen that the agent of the plaintiffs knew that the depot agent would not be in Lehman after four o'clock. Under all of the testimony it is conclusively established that the cotton did not arrive at Lehman until at least 4:30 o'clock that afternoon. The agent of the plaintiffs did not give the agent of the railroad company any shipping instructions over the telephone. The truck driver who had the shipping instructions in his possession did not deliver them to the agent at Lehman because the agent was gone when he arrived there. He did not remain there until the agent returned. Mr. Liles was the only employee defendant had at its station. The truck driver returned to Morton and advised Mr. Russell that he had not delivered the shipping instructions to the depot agent. Mr. Russell made no further effort to deliver the shipping instructions to the defendant until after the cotton was destroyed. There is no evidence that it was the custom of the railroad to place merchandise

in transit until shipping instructions had been received. The evidence discloses that there would be no train through Lehman until Monday, October 13th. If there had been a train through Lehman, the agent would not have known where to send the cotton. He did not know who the consignee was. Consequently, it is our opinion that any custom that might have arisen in handling cotton for shipping would not control in this case because there is no evidence that the railroad could or would place cotton or any other merchandise in transit without receiving shipping instructions therefor. The evidence is not sufficient to sustain a finding that the defendant was in possession of the cotton as a carrier.

■ By other points defendant complains of the action of the trial court in admitting the testimony of the witness Russell as to the weight of the cotton involved. The witness testified to the weight of each bale and to the aggregate weight of the 28 bales. He did not weigh the cotton, neither was he present when it was weighed. He testified that the cotton was weighed by different employees of plaintiffs and the weight of each bale placed upon a stub which was later recorded in a book kept for that purpose in the gin office. He did not testify that he kept the book nor that the same was correctly kept under his supervision. The book was not offered in evidence. There was no evidence that the cotton was correctly weighed. He testified that he had the weight of the 28 bales of cotton as taken from the records at the gin. Defendant objected to this testimony on the grounds that it was hearsay and that it was not shown the cotton was correctly weighed and that the weights were correctly transcribed and entered upon the books and that the original records would be the best evidence. The objections were overruled and the witness was permitted to testify as to the weight of the cotton. We believe the objections were well taken and should have been sustained. It is well settled that if the original writing is not produced or its production accounted for, evidence of its contents is not admissible. McCormick and Ray, Texas Law of Evidence, Sec. 706, page 914; Hicks v. Pogue,

33 Tex.Civ.App. 334, 76 S.W. 786; 17 Tex. Jur. page 525; Housley v. Strawn Merchandise Co., Tex.Com.App., 291 S.W. 864.

The judgment of the trial court is reversed and the cause is remanded.