INSURANCE COMPANY OF NORTH AMERICA, Appellant,

v.

T. W. McANEAR, Appellee.

No. 6463.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 17, 1955.

Rehearing Denied Feb. 14, 1955.

Edward W. Napier, Lubbock, for appellant.

Hamilton & Deaver, Memphis, for appellee.

NORTHCUTT, Justice.

This is an action wherein appellee sued appellant upon an insurance policy. Appellee had orally contracted with the Brice Gin to keep all bales of cotton, during that ginning season, removed from the gin and to haul the same to the compress at Memphis, Texas. On September 6, 1952, appellant issued its policy of insurance for a period of one year from date of issuance covering, in an amount not exceeding $5,000, appellee's liability as a carrier for loss or damage caused directly by fire to baled cotton while such bale of cotton was in the custody of appellee, the assured, and while contained in or on a 1947 International Motor Vehicle, Motor No. BLD–269–26898. On the evening of September 30, 1952, appellee removed from the gin eight bales of cotton and loaded the same upon the above mentioned motor vehicle but left the same upon the gin property for the night so that he could get additional bales the next morning as they were ginned to make him a full load. Sometime during the early morning hours of October 1, 1952, the eight bales of cotton and the motor vehicle were destroyed by fire. The Western Cotton Oil Mill paid the farmers for the seven bales of cotton owned by them that were burned and charged the amount to appellee. Appellee and his brother owned the eighth bale that was burned. Each of the farmers being paid for the loss of their cotton transferred to the appellee all of their claims and subrogated him to any claims that they might have arising from said fire, and authorized him to file suit thereon.

The case was submitted to a jury upon four special issues. The first issue asked if the appellee was negligent in leaving his cargo without an attendant at the time and place testified about; second issue—if such negligence was the proximate cause of the loss of the cotton; if appellee was negligent in failing to cover the cotton on the truck with a tarp or other sufficient covering at the time and place testified about and if such negligence was a proximate cause

of the loss of the cotton testified about. All of these questions were answered "Yes". There was no question raised as to the value of the cotton and judgment was granted for the appellee for $1,580.56 covering the eight bales of cotton. From this judgment, appellant has perfected this appeal and relies solely upon one point of error as follows:

"Assignment No. 1

"In an action based upon a policy of insurance having for its only coverage appellee's liability as a carrier the trial court erred in rendering judgment upon such policy for loss of baled cotton where the evidence conclusively shows that at the time of loss only a part of the shipment had been delivered to appellee carrier and was not delivered for immediate shipment."

It being the contention of appellant that at the time the cotton was burned, it was in the possession of appellee as a warehouseman and not as a carrier and since appellant only insured appellee as a carrier, it was not responsible for this loss because the cotton was in the possession of appellee as a warehouseman. The only question then to be determined is whether appellee was a carrier or warehouseman. This is not a case of common carrier but deals with a private carrier. In other words, appellee was a private carrier and assumed no obligation to carry for others and his private contract must be looked to determine what was his obligation. The appellant relies upon Gulf, C. & S. F. R. Co. v. Anderson, Clayton & Co., Tex.Com.App., 246 S.W. 1031 and other cases cited holding to the same effect where it is held that the party shipping one hundred bales of cotton and had delivered only a part of the one hundred bales that the entire shipment was not to be made until the entire one hundred bales of cotton were delivered, that the carrier would only be liable as a warehouseman as to those bales received until all were delivered to complete the one hundred bale shipment. We have no dispute with this theory but doubt that it applies to the facts of this case.

In the case at bar, appellee contracted to carry from the gin and to haul all cotton ginned by the Brice Gin for that season to the compress at Memphis, Texas. To hold the above principle applied, we would have to consider all of the cotton that was ginned at the Brice Gin that entire season because it all was to be hauled but it was not one shipment. The contract of hauling, however, covered all the baled cotton ginned during the whole season. It is true that twenty bales was considered as a truck load and appellee generally hauled twenty bales at a time but was under no agreement or obligation to take twenty or any other number at any one time but was at liberty to take any number of bales that he cared to haul. It was a divisible contract to be carried out in any manner that the appellee saw fit. He would make some trips with one or two bales and had carried as many as thirty at one load. The cotton was delivered to appellee to haul and deliver to the compress as he saw fit and to take any number of bales that he cared to haul at one time. Any delay or waiting for one or more bales was for the sole advantage and convenience of the appellee. It was not agreed that the gin would ship twenty bales because appellee generally hauled twenty bales at a time.

For better and more complete understanding of the insurance policy sued upon herein, it named the appellee as the insured and among many other provisions insured appellee to an amount not exceeding $5,000 and provided among other matters as follows: "This policy insures the liability of the assured as their carrier for loss or damages directly caused by: Fire—". It then further provided:

"1. Coverage. On the Assured's liability as a carrier for loss or damage caused directly by perils insured against hereunder, to lawful goods and merchandise consisting of *Baled Cotton* (hereinafter referred to as property).

"2. When and Where Covered. Covering only while the property is in the custody of the Assured and only while contained in or on the following described motor vehicle or vehicles owned, operated or contracted for by the Assured, within the limits of the United States and Canada; privilege, however, is hereby granted the Assured to substitute at any time during the currency of the Policy, other vehicle or vehicles than described herein, provided, such substituted vehicle or vehicles are owned and operated or have been contracted for by the Assured. The Assured hereby agrees to report to this Insurance Company in writing all such substitutions as soon as practicable and to pay additional premium if required.

"3. Description of Motor Vehicles and Limit of Liability Per Unit.

| Trade Name | Year Built | Factory Number Motor Number | Type of Body and Tonnage | Limit of Liability Per Unit | Rate Per Unit |
|---|---|---|---|---|---|
| International | 1947 | BLD–269–26898 | | $5000,00" | |

There is no question but what this cotton that was burned was on the same vehicle mentioned in this policy.

We are of the opinion that when appellee took possession of any bale or bales of cotton, he took possession of the same to carry it to the compress and, under his agreement, his only authority was to haul it to the compress at Memphis, Texas and thereby was a private carrier and not a warehouseman.

Judgment of the trial court is affirmed.